448 So.2d 819 (1984)
Charlotte Lynn London BOYETT, Plaintiff-Appellee,
v.
Jerry Lynn BOYETT, Defendant-Appellant.
No. 16,091-CA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 1984.
*820 Wright & Hennen by Dennis Hennen, Monroe, for defendant-appellant.
Blackwell, Chambliss, Hobbs & Henry by Larry Arbour, West Monroe, for plaintiff-appellee.
Before HALL and SEXTON, JJ., and McCLENDON, J. Pro Tem.
HALL, Judge.
This is a habeas corpus proceeding to determine custody of a minor, Amber Lee Boyett, brought by her father, Jerry Lynn Boyett, against her maternal grandmother, Shirley London. The father appeals from a judgment awarding custody of the minor to the grandmother. For the following reasons, we affirm the judgment appealed.
On August 6, 1980, when the Boyett couple were divorced, the custody of their daughter was awarded to the mother. On August 8, 1983, following the mother's incarceration for distribution of drugs, on the petition of the father alleging abandonment of the child by the mother whose whereabouts were unknown, custody of the minor was changed to the father. Approximately one and one-half to two years prior to that award, unbeknownst to the father, the grandmother had obtained custody of the girl through juvenile court proceedings in which the mother had relinquished custody in favor of the grandmother.
On August 10, 1983, the father filed for a writ of habeas corpus seeking to compel the grandmother to deliver the child to him. On August 17, 1983, the grandmother filed an answer and reconventional demand in response to the father's petition alleging that she had raised the child since birth and that the child's mother, Charlotte London Boyett, desired that custody be awarded to the grandmother, and praying that she be awarded custody of the minor. After trial, judgment denying the father's demand and awarding custody to the maternal grandmother was rendered on August 18, 1983, and signed the following day. This appeal followed.
The father contends the trial court erred in not awarding him custody because there were no compelling reasons to deny him custody. He argues the trial court made no finding that he was unable or unfit to care for the child or that he had forfeited his superior, parental right to custody of the child through neglect or abandonment *821 of the girl. In sum, he contends the trial court applied the wrong standard to this case and treated the matter as if two parents were contesting custody.
Citing LSA-C.C. Art. 146 B., as amended by Act 307 of 1982, the grandmother contends this award of custody was properly made in favor of a nonparent based upon a finding that awarding custody to the parent would be detrimental to the child and that the award to a nonparent was required to serve the best interest of the child.
The 1982 Amendment
After amendment by Act 307 of the 1982 Regular Session of the Legislature, effective January 1, 1983, LSA-C.C. Arts. 157 and 146[1] provided, in pertinent part, as follows:
"Art. 157. Custody of children; visitation rights of grandparents
"A. In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146."
"Art. 146. Custody of children pending the litigation
"A. If there are children of the marriage whose provisional custody is claimed by both husband and wife, the suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children:

"(1) To both parents jointly. The court, shall, unless waived by the court for good cause shown, require the parents to submit a plan for implementation of the custody order, or the parents acting individually or in concert may submit a custody implementation plan to the court prior to issuance of a custody decree. Such plan may include such considerations as the following:
"(a) Domiciliary arrangements for the child or children.
"(b) Rights of access and communication between the respective parents and the child or children.
"(c) Child support, if appropriate to the economic circumstances of the parents.
"(d) Any other matter deemed in the best interest of the child or children.
"(2) To either parent. In making an order for custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent, and shall not prefer a parent as custodian because of that parent's sex. The burden of proof that joint custody would not be in a child's best interest shall be upon the parent requesting sole custody.
"(3) If to neither parent, to the person or persons in whose home the child has been living in a wholesome and stable environment.

"(4) To any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment.

"B. Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings." (emphasis added)
The opposing parties in this custody suit agree that LSA-C.C. Art. 146 governs this situation. They do not agree, however, on the effect of Act 307 of 1982 as it relates to custody disputes pitting a parent against a nonparent.
The father contends that the passage of Act 307 in no way changed the previously-existing, *822 jurisprudentially-developed rules regulating custody awards which prefer a parent over a nonparent. Citing Wood v. Beard, 290 So.2d 675 (La.1974), as the most often cited pronouncement of these rules, he contends that, under the amended statute, in order to award custody to a nonparent the court still must find the parent unable or unfit to provide a home for the child or find a forfeiture by the parent of the paramount or superior parental right to custody.
The grandmother contends that the amendment of LSA-C.C. Art. 146 changed prior law by specifically authorizing a custody award to a nonparent based upon the findings that an award of custody to the parent "would be detrimental to the child" and that "the award to a nonparent is required to serve the best interest of the child." Whether or not the cited language works a change in the law, she further argues, the evidence presented in this case justifies the award of custody to a nonparent even under the rules enunciated in Wood v. Beard, supra, and should be affirmed on that basis.
Our scrutiny of Art. 146 as amended by Act 307 convinces us that a change in the law has occurred. The prior jurisprudence had awarded custody to a nonparent in preference to a parent only in those situations in which the parent was unable or unfit to provide the child a home or had forfeited the otherwise superior parental right of custody. See Cawthorne v. Williams, 313 So.2d 915 (La.App. 2d Cir.1975), for example. The primary concern in making such awards was the welfare or best interest of the child, not simply the enforcement of parental rights. Wood v. Beard, supra at 677.
Under the article as amended, the primary concern remains the same but the judiciary has been given more freedom or latitude to pursue the goal of insuring that the best interest of the child is served in resolving custody disputes between parent and nonparent litigants. Presently, an award of custody to someone other than a parent can be made if it is found that awarding custody to the parent would be detrimental to the child and that the award to the nonparent is required to serve the child's best interest. LSA-C.C. Art. 146 B.
Under prior law, custody awards to nonparents could be made in pursuit of the child's best interest only under those conditions previously discussed, a forfeiture of paramount parental rights or a finding that the parent was unfit or unable to provide a home. However, the use of the word "detrimental" in the new act embraces a wider range of situations, including those previously recognized in the jurisprudence as cause for awarding custody to a nonparent. See 43 La.L.Rev. 759 at 774. It is reasonable to assume that had the Legislature intended merely to codify the existing law in this area they would have incorporated into the statute the familiar and oft-cited phraseology of the jurisprudence concerning parental rights. Instead, they chose to utilize language which broadens somewhat the range of situations in which a nonparent custody award is permissible. The amendment allows more freedom to pursue what has always been considered the primary consideration in custody cases, the best interest of the child or children involved.
However, this expansion of situations in which a nonparent custody award is permissible is coupled with a safeguard designed to prevent the needless erosion or abuse of the parents' superior right to custody. Art. 146 B. provides that the non-parent award must be "required" to serve the child's best interest. The use of the word "required" connotes necessity. In other words, the nature or extent of the detriment faced by the child under an award of custody to the parent must be such that it outweighs the parent's otherwise superior right and makes it necessary or essential, in pursuit of the child's best interest, that custody be awarded to the nonparent.
In sum, under Art. 146 as amended by Act 307 of 1982, a parent now enjoys a *823 paramount right of custody which can be outweighed by a sufficiently grave detriment to the child's best interest, present in awarding custody to that parent, which requires that custody be awarded to a nonparent.
The application of this standard to the case presently before us is our next concern.
Custody of the Child
The evidence relative to the relationship or environment the girl presently enjoys by living with her grandmother establishes the following. The grandmother has provided a stable environment for the girl practically since her birth and has had continuous, physical custody of the child for at least four and one-half years prior to trial. Amber's kindergarten teacher testified that the child was healthy, clean, and appeared to be well cared for while a student in her class. She further testified that the girl and her grandmother appeared to enjoy a normal, loving relationship and that the grandmother took an active part in the child's school activities. Shirley London, the grandmother, testified that she and Amber often engage in various activities together after the child returns home from her day at school. There is no indication in the record of any financial instability in the child's present environment.
Most of the evidence presented in this case deals with the fitness of the father, Jerry Boyett, to be awarded custody of his daughter, that is, whether or not there existed compelling reasons for denying the father custody. Under prior jurisprudence, this burden rested with the grandmother. State In Interest of Jones v. Jones, 430 So.2d 169 (La.App. 2d Cir. 1983); Jones v. Jones, 415 So.2d 300 (La. App. 2d Cir.1982). Under the new act, given the order of preference established for awarding custody and the nature of the findings which must be made in order to justify an award to a nonparent, the burden of proving that, due to the detrimental aspects of awarding the parent custody, an award of custody to a nonparent is required to serve the child's best interest continues to rest with the nonparent.
The grandmother presented evidence that the father has a drinking problem and an unstable employment history, had physically abused another daughter by a previous marriage who was subsequently placed in foster care for between three and one-half and four years prior to being placed in the custody of her paternal grandmother, and had expressed no interest in the other daughter while she was in foster care and no concern for or interest in Amber during the more than four and one-half years in which she has been in Shirley London's care and custody. There was also testimony that a great deal of drinking and cursing routinely goes on around Jerry Boyett's residence. There was additional testimony that marijuana was routinely being smoked by visitors to the Boyett residence. These observations concerning alcohol and substance abuse, as well as the use of profane language, were made by individuals visiting the Boyett residence for various reasons more or less regularly over a period of time which included the six months immediately preceeding trial of this matter.
Jerry Boyett admitted he had a drinking problem and unstable employment history in the past, but presented evidence, the testimony of his mother and siblings, in an attempt to establish that during the past two or three years he has overcome his alcohol abuse and has been steadily employed. He testified that, while he still drinks, he now drinks no more than two cans of beer per night. This testimony is corroborated by most of his witnesses. However, it was flatly contradicted by the testimony of the frequent visitors to the Boyett residence, as well as the testimony of one of his brothers who said that Boyett still drinks in the amounts that he always did. The father's witnesses corroborated his testimony that he has been employed fairly steadily for the past two or three years. The father also testified that on the one occasion when he discovered marijuana smoking at his residence he stopped it and further testified that he does not condone or allow such behavior.
*824 The testimony of all the witnesses indicates that Boyett has made very little if any attempt to have contact with Amber in at least the past four and one-half years prior to filing this suit. He testified he sent her no presents, cards, or letters during that time but did talk with her on the phone a couple of times. Shirley London testified Amber received no such phone calls.
The essence of the father's contention is that he has been denied access to the child since he and his ex-wife physically separated more than four and one-half years ago. However, the preponderance of the testimony, including that of his mother with whom he has been residing since that time, is that, rather than being denied access, Boyett has made no real attempt to contact his child or become involved in her life as a parent should. Based on this evidence, the trial court found Boyett had not effectively exercised parental responsibility for Amber throughout most of her life and had made little or no effort to have contact with the girl. We agree with that conclusion.
The trial court found the testimony presented cast a grave doubt on the father's professed reformation and found that an award of custody to the father would be detrimental to the child. Accordingly, the court elected to award custody to the maternal grandmother who had been providing the child with a stable and wholesome environment since the child's birth. We agree that the award to the grandmother was required in this instance to serve the best interest of the child. An award to a nonparent in whose home the child has been living in a wholesome and stable environment is specifically authorized, upon the requisite findings, by LSA-C.C. Art. 146 A.(3). We find no abuse of the trial court's great discretion in the decision to award the grandmother custody, and, accordingly, affirm the judgment appealed.
Decree
For these reasons, the judgment of the district court is affirmed at appellant's costs.
Affirmed.
NOTES
[1] The amendment of LSA-C.C. Art. 146 by Act 695 of 1983, effective after the trial of this proceeding, made no change pertinent to this controversy.