465 So.2d 844 (1985)
James Walter RECKNAGEL, Sr. and Dayna Faye Roberts Recknagel, Plaintiffs-Appellants,
v.
Amaryllis June Pittman ROBERTS, Defendant-Appellant-Appellee,
Bobby Ray Aldridge and Linda Gail Recknagel Aldridge, Intervenors-Appellants-Appellees.
No. 16773-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
Rehearing Denied March 27, 1985.
Writ Denied May 13, 1985.
*845 Bowers & Bowers by Gary A. Bowers, Shreveport, for plaintiffs-appellants.
Francis M. Gowen, Jr., Shreveport, for defendant-appellant-appellee, Amaryllis June Pittman Roberts.
Sockrider, Bolin & Anglin by H.F. Sockrider, Jr., Shreveport, for intervenors-appellants-appellees, Bobby Ray Aldridge and Linda Gail Recknagel Aldridge.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
The parents of a young boy brought this custody suit against the legal custodian of their son, his maternal grandmother. The physical custodians of the boy, his paternal aunt and her husband, intervened seeking legal custody. The physical custodians sought and received a provisional custody decree. The grandmother filed a habeas corpus action seeking dissolution of the provisional custody decree and return of the child to her. The trial judge awarded custody of the child to the parents and awarded visitation privileges to the defendant and intervenors. All parties have appealed. We affirm for the following reasons.
The parents of the child married and moved to Houston in 1976. In 1977, they had the child who is the subject of this lawsuit. As a result of the birth, the mother experienced health problems and the young parents experienced marital problems. Both sets of grandparents intervened in the interest of the newborn and the sick mother. Lawyers were retained, and an extensive document was drawn up divorcing the parties, dividing their property, and giving custody of the baby to the *846 maternal grandmother. Upon judicial ratification of this document, the infant was moved to Bossier Parish to live with the maternal grandmother.
Shortly after the move, the grandmother's health took a turn for the worse and a series of medical problems made it difficult for her to care for the child. After conferring with the paternal grandparents, the father's sister and her husband were approached and agreed to keep the child on weekdays. The weekends were reserved for visitation with the grandparents. The evidence reflects that most weekends were spent with the maternal grandparents. This arrangement continued until judgment by the trial court in this matter (a period of approximately seven years).
This case was precipitated by the reconciliation and remarriage of the parents in 1981. Upon remarriage of the parents, they regularly visited the child in the home of the maternal grandparents on weekends. Once their home situation stabilized and questions were raised about the fitness of the paternal aunt, suit was filed.
The law applicable in cases such as this is set forth in Boyett v. Boyett, 448 So.2d 819 (La.App. 2d Cir.1984). "In sum, under Article 146 as amended by Act 307 of 1982, a parent now enjoys a paramount right of custody which can be outweighed by a sufficiently grave detriment to the child's best interest, present in awarding custody to that parent, which requires that custody be awarded to a nonparent." Boyett, supra, at 822-823. This court emphasized that the burden of proving that awarding custody to the parents would be detrimental rests on the nonparent. Boyett, supra, at 823. This interpretation of the law expands the jurisprudential rule of Wood v. Beard, 290 So.2d 675 (La.1974), which requires a finding that the parent be found unable or unfit to provide a home for the child or a finding that the parent has forfeited the paramount parental right. Act 307 of 1982 allows the courts to go beyond Wood and inquire into whether there is such a detriment faced by a child under an award of custody to his parents that his best interest necessitates awarding custody to a nonparent.
We decline to go as far as counsel for the nonparents would urge upon us and say that parents and nonparents are on an equal footing in determining the best interest of the child. This would necessarily favor grandparents in many cases since they are generally older, wiser, more established, more stable and have greater financial resources. The law of Louisiana is unwavering in its recognition of the paramount parental right.
In this case, the parents are able to provide a home for the child. While there is evidence of an unsteady employment history, the father receives a substantial income from a trust fund left him by his father which amounts to somewhere between $6,000 and $9,000 a month. While there is some evidence of past emotional problems, there is no evidence reflecting on the parents' current fitness to raise their child. Even though the parents voluntarily relinquished custody of their child initially, the evidence reflects that they constantly maintained contact with the child and that money from the father's trust fund went to the physical custodians of the child to aid in his support. Consequently, it cannot be said that these parents forfeited their rights or are unfit or unable to provide a home for the child.
Furthermore, the record is devoid of any evidence showing that the child faces any sort of detriment in an award of custody to his parents. The trial judge specifically stated that "the facts in this case fall short of establishing that an award of custody to the parents would be detrimental to the child." The trial judge is not manifestly erroneous in that determination. Consequently, any inquiry into the fitness or unfitness of the nonparents is pretermitted. The nonparents have failed to meet their burden of proof.
The next issue before this court is whether the trial court erred when it allowed the paternal aunt and her husband and the maternal grandmother visitation *847 rights. It is argued by the parents that there is no statutory authority for awarding visitation rights to nonparents when both of the parents are living, married and have custody of the child. It is true that there is no right of visitation that can be asserted by the nonparent in this case. However, the court has the authority, in the best interest of the child, to impose reasonable conditions on a grant of custody. The trial court reasonably conditioned custody on allowance of visitation to the nonparents in light of the child's longstanding and close relationship to them.
The visitation issue is not moot as a result of a consent judgment granting specific visitation privileges. First, the subsequent proceeding is not a part of the record of this appeal. Second, the subsequent consent judgment was merely specifying the visitation privileges allowed in the judgment now under appeal, which must be complied with until such time as it is reversed on appeal, as judgments in custody cases cannot be appealed suspensively. La.C.C.P. 3943. Third, counsel for the parents specifically reserved their rights under this appeal in agreeing to the visitation judgment which was an attempt to resolve the immediate visitation problems.
In conclusion, we find that there has been no showing that restoring custody of their child to these parents will be detrimental to the child. We find that the result the trial court reached is correct under the law enunciated in Boyett v. Boyett, supra. We hold that the trial judge acted within the great discretion allowed him in rendering a custody and visitation decree which serves the best interest of this child. We therefore affirm the judgment of the trial court and assess the costs of appeal to all appellants, in equal proportions.