479 So.2d 1044 (1985)
Angelina BATISTE, Plaintiff-Appellant,
v.
Rickey James GUILLORY, Defendant-Appellee.
No. 84-942.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
*1045 Robert W. Stratton, Robert Lee Oliver, Baton Rouge, for plaintiff-appellant.
Bobbie Ross, S.W. Legal Services, Lake Charles, for defendant-appellee.
Before GUIDRY, DOUCET and LABORDE, JJ.
GUIDRY, Judge.
This appeal arises out of a custody dispute over two minor children between the maternal grandmother, Angelina Batiste, and the legal father, Rickey James Guillory. Previous to this suit, the legal mother, Leola Batiste Guillory, now deceased, had sole custody of the two children. Plaintiff-appellant, *1046 Angelina Batiste, obtained an ex parte order for provisional custody of the children on January 31, 1984. After the hearing on a rule for permanent custody, the trial court granted custody to Rickey Guillory, defendant-appellee, with liberal visitation rights granted to the maternal grandmother.

FACTS
Leola Batiste Guillory, now deceased, and Rickey James Guillory, the defendant-appellee, were married sometime around October, 1972; he was 16 and she was 15 years of age. Two children, Joy Marie Guillory and Rickey James Guillory, Jr., were born of that marriage. In 1977, Leola and Rickey were divorced. Leola was given sole custody of the children subject to Rickey's right of visitation every other weekend.
After the divorce, Leola and the children tried to live on their own as much as possible, but, because of Leola's precarious financial position, they often found themselves residing with Angelina Batiste, the maternal grandmother. Just before Leola's demise, Leola and the children were again living on their own.
Leola entered a hospital sometime in October, 1983, and passed away on October 26, 1983. Rickey took physical custody of the children when Leola entered the hospital. The children lived with Rickey, his new wife, and their twin baby boys for approximately 2½ months.
In late January, 1984, Angelina obtained provisional custody of the children by ex parte order. Angelina then filed this rule seeking permanent custody.
During the permanent custody hearing, there was testimony that when Leola had sole custody of the children, Rickey only visited them three or four times a year, and then only during the day. However, there was further testimony that Leola did not want Rickey to visit with the children for any extensive period of time, and to avoid continuing confrontations, Rickey acceded to Leola's wishes.
Testimony at the hearing also showed that Rickey and Leola experienced a difficult marriage:
1. In 1976, Rickey dragged Leola down a shell driveway causing her back to bleed;
2. In 1977, Rickey, in an apparent fit of rage, broke most of their interior house furnishings, and then fought with the police when they tried to calm him down;
3. In 1977, Rickey intentionally broke the windshield of his car from the outside by slamming his head into it;
4. In 1977, Rickey was admitted to Moss Regional Hospital, diagnosed as having inappropriate adjust-reactions, a psychiatric disorder.
Even after the separation and divorce there were some difficulties. At one point, shortly after the separation in 1977, Rickey broke into the maternal grandmother's house where Leola and the children were staying and approached Leola with either a switchblade or razorblade.
Since those early tumultuous days, Rickey has had no other reported physical encounters with Leola. However, trial testimony brought out two more recent behavioral outbursts.
One of the appellant's witnesses declared that she saw Rickey and his new wife, Lisa, fighting at a local lounge. The witness had been at the lounge for three or four hours drinking beer when the alleged scuffle took place. The incident allegedly took place during the early months of 1980.
The second recent behavioral outburst was revealed on cross-examination when Rickey testified that just prior to the hearing he and his present wife had had a little argument. He got hot under the collar and, as he stood up, he attempted to hit the top of the television but instead hit the bottom portion of a glass aquarium which rested on the television. This caused the glass to break. The tendons in appellee's wrist were lacerated, thus, necessitating a four day hospital stay for corrective microsurgery and recovery.
*1047 In 1981, Rickey was found in contempt of a child support order; he owed $685.00 in back payments. These back payments, however, were apparently eventually made.
The business manager of Rickey's present employer, Murphy Cormier, General Contractor, testified that Rickey was a highly responsible person; he was earning $1,300.00 per month at the time of the hearing; had worked for them for six years; and, had been promoted to the position of steward or foreman. The business manager further declared that Rickey had been carrying health and medical insurance on the children since he started working.
Rickey remarried in 1980 to Lisa Ann Guillory. At the time of this litigation, Rickey and Lisa Ann were expecting a third child. Lisa testified that she cared for Joy and Rickey, Jr.; she helped the children with their school work; and, attended some of their school activities.
When Rickey took physical custody of the children in October, 1983, he made sure that the children continued their education. He initially transported the children to the school in which their mother, Leola, had them enrolled. However, after this arrangement proved unwieldly, Rickey had the two children transferred to a school near his home.
During this period of time, from October, 1983 to January, 1984, Rickey also made sure that the children continued their religious education, a subject that seemed important to all the parties concerned in this suit. He also let the children visit their maternal grandmother frequently. Angelina Batiste even testified that she was allowed to see the children every weekend during this time.
Rickey presented family photographs at the hearing showing instances of the type of interaction which he and his new family had with Joy and Rickey, Jr. The pictures of birthday parties, a visit to the beach, and family closeness, corroborated the testimony of various witnesses that Joy and Rickey, Jr. were well accepted by Rickey and his new family.
The issues presented in this appeal are:
1. Should the record of the proceedings in State v. Rickey J. Guillory, Sr., case no. 80-3406, Fourteenth Judicial District, Calcasieu Parish, be included in the record for appeal.
2. Did the trial court apply the wrong standard when considering whether an award of custody should be made to a parent over a non-parent.
3. Did the trial court err in not letting the two children testify.
4. Did the trial court err in awarding custody to the legal father, with liberal visitation rights to the maternal grandmother.
5. Did the trial court err in assessing costs to the defendant-appellee.

CORRECTION OF RECORD
After this appeal was lodged, appellant filed a "Motion to Obtain Correction of Record". Appellant contends that the appellate record is incomplete since it does not contain the non-support record in State v. Rickey J. Guillory, Sr., No. 80-3406, which was offered and received in evidence at the trial level. Appellee agrees that this record should have been included.
Louisiana Code of Civil Procedure Article 2132 provides:
"A record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. All other questions as to the content and form of the record shall be presented to the appellate court." (Emphasis ours).
Since the parties agree, the appellate record is corrected by including therein proceedings entitled State v. Rickey Guillory, Sr., No. 80-3406, docket of the 14th Judicial District Court.

*1048 PROPER STANDARD
Appellant contends that the trial court used the wrong standard when it granted custody of the two children to the appellee. The court, in its written reasons, used the following standard to decide whether the father or the maternal grandmother should have custody of the two children:
"The right of a parent to the legal custody of a child is preferred over a non-parent or even a grandparent. It is only when the conduct of the parent convinces the court that the physical, mental and moral fitness of the child would be best served by awarding custody to another that this preference ceases to operate."
LSA-C.C. Art. 146 states, in pertinent part, that:
"B. Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings." (Emphasis ours).
Although the trial judge did not use the exact language contained in LSA-C.C. Art. 146(B), we conclude that he used the proper standard, only stated somewhat differently.
Under La.C.C. Art. 146, the burden is on the non-parent to prove that a grant of custody to the parent would be detrimental to the child and the award of custody to the non-parent is required to serve the best interest of the child.
There are various ways to express the standard that "custody to a parent would be detrimental to the child." In the case of State In The Matter of Williams, 447 So.2d 1211 (La.App. 5th Cir.1984), writ denied, 449 So.2d 1357, the court said, in regard to this standard, that "convincing proof must be established that the parent is unfit or has forfeited the parental right to custody by action or omission." (Emphasis ours).
Black's Law Dictionary 406 (5th Ed. 1979) defines detriment as "any loss or harm suffered in person or property." Thus, the applicable standard could reasonably be rephrased to produce a test that would require the court to determine if granting custody to the natural parent would be harmful to the child.
When the legislature changed the standard used in custody awards to non-parents it expanded the jurisprudential rule of Wood v. Beard, 290 So.2d 675 (La. 1974), which required a finding that the parent be found unable or unfit to provide a home for the child or a finding that the parent had forfeited the paramount parental right. Recknagel v. Roberts, 465 So.2d 844 (La. App. 2d Cir.1985), writ denied, 468 So.2d 570, 579. This expansion, through the use of the general term "detrimental", allows the trial court to look at a multitude of factors in non-parent versus parent custody disputes.
The "conduct" of the parent is one of the most important factors in determining whether an award of custody to the parent would be detrimental or harmful to the child. The conduct, outward behavior of the parent, creates a role model for the child. If the parent presents a poor role model (injurious conduct), is physically, sexually, or mentally abusive to the child or to those around the child, then the child will have a significantly decreased chance to live a normal, happy, and productive childhood and, later, adulthood.
Since the legislature has provided the courts with a rule that expanded upon the standard set down in Wood, supra, we think the trial court was correct in its application of a standard that took cognizance of the best interest of the children in question by scrutinizing the conduct of the parent requesting custody, and scrutinizing the effect of that parent's conduct upon the physical, mental and moral fitness of the children. We thus conclude that the trial *1049 court did not apply the wrong standard in this custody dispute.

TESTIMONY OF THE CHILDREN
Plaintiff-appellant strongly urges that the trial court erred when it excluded the testimony of the two children, who were 8 and 10 years old at the time of the hearing. Appellant correctly argues that, with respect to children as witnesses, understanding and not age, is the test of competency. LSA-R.S. 15:469. The appellant is also correct in stating that ordinarily a child's preference as to which custodial parent he wishes is to be given more than casual consideration by the trial judge. Theriot v. Huval, 413 So.2d 337 (La.App. 3rd Cir.1982).
However, from a reading of the trial record, we are forced to agree with appellee that appellant simply failed to preserve this issue for appellate review.
During the opening moments of the custody hearing, the following exchange took place:
"The Court: ..thirdly, the children whose custody is at issue will be excluded from the Courtroom ... I notice you list them as witnesses, and I just want to tell you, Mr. Stratton, that the Court normally will not permit children to testify in a custody trial.
Mr. Stratton: Yes, sir."
Appellant argues that the mere offering of the children as witnesses on behalf of their grandmother was sufficient to preserve this issue. We disagree.
Two Louisiana Code of Civil Procedure articles are pertinent to this issue:
Art. 1635.
"Formal exceptions to rulings or orders of the court are unnecessary. For all purposes it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."
Art. 1636.
"When a court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. In all cases the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.
If the court permits a party to make a complete record of the evidence held inadmissible, it shall allow any other party to make a record in the same manner of any evidence bearing upon the evidence held inadmissible."
The trial judge did not refuse to accept the children as witnesses but simply stated, at the outset of the hearing, that "normally" he would not permit children to testify in a custody trial. Appellant's counsel did not voice any objection to this general statement by the court nor did appellant thereafter seek to call the children as witnesses or to preserve their testimony under an offer of proof or make a statement setting forth the nature of the evidence sought to be elicited from the children.
In Grusich v. Grusich, 447 So.2d 93 (La. App. 4th Cir.1984), a similar situation to the one at hand occurred. In that case, after the parties testified, the husband's counsel stated, "I want to take the stand." The trial judge told him he could not testify and provided him with brief reasons for that ruling. The husband's counsel then stated, "All right." Counsel did not object, provide the court with reasons why he should be allowed to testify, or make a statement setting forth the nature of his excluded testimony. The Fourth Circuit held that appellant's counsel did nothing to preserve the issue for appellate review.
In our case, appellant's counsel acquiesced in the trial court's decision as in Grusich, supra. Since counsel did not object, did not state his reasons for wanting *1050 the children to testify, or make an offer of proof, he cannot now contend that the exclusion of the children as witnesses was error. Appellant has not preserved this issue for appellate review.

CUSTODY OF THE CHILDREN
Appellant contends that the trial court erred in awarding custody to the father because there was overwhelming evidence which showed that this would be detrimental to the best interest of the children.
In child custody matters, the trial judge is afforded wide discretion in determining which arrangement will serve the best interest of the child, and his determination will not be disturbed absent a manifest abuse of discretion. Lachney v. Lachney, 446 So.2d 923 (La.App. 3rd Cir.1984), writ denied, 450 So.2d 964; Ferry v. Ferry, 433 So.2d 359 (La.App. 3rd Cir.1983); Fortenberry v. Fortenberry, 432 So.2d 1125 (La. App. 3rd Cir.1983).
In this case, the trial judge, pursuant to LSA-C.C. Art. 146(B), had to first determine if custody to the parent would be detrimental to the children.
The appellant's main contention in regard to this issue is that the trial judge failed to take into account the father's alleged violent and dangerous propensities. Appellant points to the violent behavior that the father displayed in 1976 and 1977, and to the alleged fight that the appellee and his new wife, Lisa, had at a lounge in 1980.
After reviewing the trial record, we conclude that the trial judge was not clearly wrong in his decision. The violent behavior that the appellant relies upon occurred several years prior to the hearing in this case. The alleged fight between the appellee and his new wife, and the injuring of the appellee's wrist when he broke the glass of an aquarium are two isolated instances that do not necessarily prove that appellee has a violent and dangerous character that would be detrimental to the children.
Appellant further argues that we should come to the same conclusion as did the court in Boyett v. Boyett, 448 So.2d 819 (La.App.2d Cir.1984). Boyett was a custody battle between the maternal grandmother and the father. In that case the evidence revealed that the grandmother had provided a stable environment for the children since birth and had had continuous custody of the child involved for at least 4½ years prior to the trial; the father had a drinking problem; and, the father had made no real attempt to contact his child or become involved in her life during the 4½ years prior to filing the suit. Under these facts, our brethren of the Second Circuit affirmed the trial court's custody award to the maternal grandmother.
We believe that the facts of the instant case are easily distinguishable from those present in Boyett. In the present case, the maternal grandmother cannot validly claim to have had custody of the children for any extended length of time. Leola, who had sole custody of the children, was often moving in or out of the grandmother's home with the children. While it might be said that the grandmother had a close relationship with the children, it cannot be said that she provided a stable environment for the children for any substantial length of time. Also, in this case, the evidence does not show that Rickey has an alcohol or drug problem as in Boyett. Lastly, in this case, the father is shown by the record to have maintained a fairly close relationship with his children, particularly after the death of their mother.
Indeed, the facts in this case (specifically that the father earns a sufficient income; his employer thinks highly of him; he has maintained insurance on the children since 1979; he has attempted to maintain child support payments with the payment of all arrearages; he attempted to stay in contact with his children while his ex-wife had sole custody; he immediately went to the aid of his children when his ex-wife had to enter the hospital; he enrolled them in school and kept up their religious education; his new wife expressed affection for the children and a desire to have them become part of her *1051 family; and, other positive findings) adequately support the trial judge's finding that giving custody to the father would not be detrimental to the children. We believe, as did the trial judge, that it is in the best interest of these children to have them in the custody of their father, a father who has established a good relationship with the children, and has expressed a strong desire to have them live with him.
We also take notice of the fact that the trial judge has ordered that the maternal grandmother be given liberal visitation rights.

COSTS ASSESSED BY THE TRIAL COURT
The trial court assessed defendant-appellee with all costs of this proceeding. Appellee, by answer to this appeal, asserts that this was error.
LSA-C.C.P. Art. 1920 states:
"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
Chaisson v. Domingue, 175 So.2d 902 (La. App. 3rd Cir.1965); Metalock Corp. v. MetalLocking of La., Inc., 260 So.2d 814 (La. App. 4th Cir.1972), writ denied, 262 La. 189, 262 So.2d 788 (1972).
The trial judge's assessment of costs can be reversed by the Court of Appeal only upon a showing of abuse of discretion. Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504 (La.App. 5th Cir. 1984), writ denied, 449 So.2d 1359.
In this case, the trial judge did not give reasons for assessing the costs to the defendant-appellee. However, when considering the overall circumstances of this case (specifically that the defendant-appellee is gainfully employed while plaintiff-appellant filed her suit in forma pauperis), we find that the trial court's discretion in assessing costs was not abused. Thus, we affirm the assessment of trial costs against the appellee.
For the above and foregoing reasons, the appellant's motion to include the trial proceeding styled "State v. Rickey J. Guillory, Sr., Case No. 80-3406", as part of the record for appellate review is granted. The judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.