504 So.2d 101 (1987)
In the Matter of the Minor Child Anetta Angela FOX.
No. 18438-CAJ.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1987.
Writ Denied April 3, 1987.
*102 Lieselotte Twele Morvan, in pro. per.
James D. Hall, Bossier City, for Helen Morvan Green.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
This is a suit for child custody. The plaintiff is the child's grandmother, Mrs. Morvan; the defendant is the child's mother and the plaintiff's daughter, Mrs. Helen Green. The child, Angela Fox, was six years old when the case was tried in May 1986. The trial court ordered a number of investigations through the Department of Health and Human Resources. On the basis of these studies and extensive trial testimony, the trial court found that Mrs. Morvan had failed to prove that Helen's continued custody would be detrimental to Angela's best interest. It therefore refused to remove custody from Helen Green and her husband, Steve. Mrs. Morvan now appeals, raising two evidentiary questions and alleging manifest error. For the reasons expressed, we affirm.
Mrs. Morvan dismissed her attorney early in the proceedings and thenceforth represented herself. Not completely understanding the rules of evidence, she filed long, rambling writings describing the minutiae of the events leading to the lawsuit; she also included newspaper and magazine clippings. These documents, filed both in *103 the trial court and in this court, regularly exceeded the bounds of the petition. Such "filings" would not ordinarily be permitted of a lawyer who is not only an advocate but also an officer of the court. We mention this only because the record is in a poor condition and we have had to separate the legally competent and admissible evidence from the great bulk of what Mrs. Morvan was indulgently allowed to "file." For our recitation of facts we will rely as much as possible on what was actually admitted and proved, disregarding Mrs. Morvan's allegations that are lurid and accusatory.
Angela lived with Mr. and Mrs. Morvan[1] since her birth in 1980 until June 1985. Helen had recently separated from her first husband, Alan Fox, who is not involved in this litigation, and moved in with her parents before Angela was born. Helen stayed at home for about two years. During this time, the relationship with her mother deteriorated from somewhat strained to difficult and confrontational. Mrs. Morvan apparently disapproved of Helen going out and dating; this caused arguments and fights. Helen eventually left but Mrs. Morvan insisted that Angela stay behind. Probably to avoid a worse confrontation, Helen reluctantly let Angela stay, but fully intended to take her back as soon as possible. While Helen was away, she contributed to Angela's support. During this time, Mrs. Morvan grew unusually attached to, and protective of, Angela. She would allow Helen to visit Angela but only seldom to take her away for a visit.
After a year or so, Helen met Steve Green, whom she eventually married. She was 29 years old; Steve was 18. Mrs. Morvan was suspicious of Steve and disliked him. She claimed that when Helen and Steve took Angela to their house in Bossier City, Steve abused her sexually. She particularly accused Steve of kissing Angela improperly, of undressing her and of rubbing his genitals on her. She also accused him of being an alcoholic and generally bossy. In March 1985, Mrs. Morvan called the Child Protection Agency in Caddo and Bossier Parishes to report her suspicions.
The Agency's file was made part of the record in this case. It shows Mrs. Morvan lodging repetitive complaints and badgering the Agency employees.[2] By contrast, Steve and Helen Green were entirely cooperative. The Agency conducted its study and could find no evidence of abuse. One physician who examined Angela found some irritation of the vaginal area but no entry. What the Agency concluded, however, was that Angela needed to be with her mother or else she would be placed in foster care.
The day before Angela was to be removed from Mrs. Morvan's rural home, Mrs. Morvan tape recorded an interview between herself and Angela. On this tape, Mrs. Morvan elicited stories of sexual abuse. She brought the tape to juvenile court and was trying to play it to a judge when Steve and Helen, who had spotted Mrs. Morvan's car parked outside, came up and asked for Angela. There was nearly a fight, and the police had to be summoned. Angela was nevertheless transferred to Helen and Steve's custody where she has remained since June 19, 1985. Mrs. Morvan filed this suit on July 9. She alleged the incidents of sexual abuse and general lack of medical and dental care.
Early in the proceedings the trial court ordered a number of studies through DHHR. It first requested home studies of both the Morvan and the Green homes, an investigation of the alleged abuse, and psychiatric evaluations of Mrs. Morvan, Helen, Steve and Angela. In short, these confidential studies showed that both Mrs. Morvan and the Greens could provide good, loving homes for Angela. These studies found no indication that Steve had been involved in abuse of Angela.
The case came to trial in May 1986. Mrs. Morvan took the stand and gave a narrative *104 of facts. She said that Helen and Steve started picking up Angela in February 1985. When she tried to give details of an incident of sexual abuse in March 1985, she was halted with a hearsay objection. When she attempted to offer into evidence the medical report of vaginal irritation, she once again met an objection. She was confined to testifying about Angela's nightmares and reticence, which she attributed to the sexual abuse. She testified that Helen and Steve were not giving Angela proper dental and medical attention, but she admitted she herself had never taken Angela to the dentist. Mr. Morvan also testified, but he was frequently met with the same hearsay objections. The remainder of plaintiff's witnesses attested to the wholesomeness of Mrs. Morvan's home and her excellent personal qualities.
For the defendant, Steve Green took the stand and admitted that he had helped Angela undress on one occasion when the family was in a hurry, but he denied every allegation of abuse. Helen Green related the long history of disputes between herself and her mother, and testified that Angela was very happy and well-adjusted in her new home. She denied that Steve had ever abused Angela; she would not stand for this. Several of Steve's relatives also testified.
In a well-reasoned opinion, the trial court made a number of findings. It found that Mr. and Mrs. Morvan love Angela very much and can provide an excellent home for her. It declined to call Angela as a witness because of her tender age and the abundance of reports from DHHR dealing with her. It then found there was no evidence to support Mrs. Morvan's claims of sexual abuse. It cited the DHHR investigations and the lack of medical evidence. It stressed Steve Green's credibility on the witness stand as persuasive that the charges of abuse were groundless. It finally cited the DHHR home study as proof that the Greens' home was suitable for Angela. It concluded that under LSA-C.C. art. 146 and the jurisprudence, notably Boyett v. Boyett, 448 So.2d 819 (La.App. 2d Cir.1984), Mrs. Morvan failed to prove that custody with the Greens would be detrimental to the child and that custody with the grandparent would be necessary to promote her best interest.
From this recitation of the case, it should be clear that the correctness of the judgment is gauged by the manifest error rule. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Before discussing this specifically, we will address the evidentiary issues raised by Mrs. Morvan.
She first contends that the trial court erred in refusing to admit at trial the medical report from Dr. Shaw at the LSU Medical Center. This report, which found the "female introitus, mildly erythematous, no signs of trauma, hymen intact," was the only piece of evidence that tended to support her claim of abuse. She filed the report with the clerk of court before trial, R.p. 247, and then attempted to offer it at trial. Ordinarily, a doctor's report is not admissible because it is hearsay. Hookfin v. Bourne, 469 So.2d 24 (La.App. 1st Cir. 1985); Daniels v. Union Oil Mill, 161 So. 614 (La.App. 2d Cir.1935); cf. LSA-R.S. 15:434. Mrs. Morvan should have subpoenaed Dr. Shaw, placed her on the stand and allowed her to explain her report. Then Helen's attorney could have cross-examined her. There are certain exceptions to this rule of hearsay: a hospital record is admissible as an official record, LSA-R.S. 13:3714, and a doctor's medical record is admissible on a hearing to confirm a default, LSA-C.C.P. art. 1702. In the instant case, neither of these situations obtains so the objection was properly sustained.
She next complains that the trial court erred in refusing to listen to the cassette tape that she secretly made of Angela on June 18, 1985. Mrs. Morvan has also "offered" to this court a "copy" of the tape with better sound reproduction. The decision to listen to the child's testimony in a custody case is a matter of great discretion. LSA-C.C. art. 146 C(2)(i). The trial court was certainly entitled to find that six-year old Angela was too young to express a reasonable preference. Furthermore, the circumstances under which the tape was recorded were suspect. It was *105 firmly established that Mrs. Morvan did not want to relinquish Angela, and a tape made on the very eve of that event was likely to be tainted by influence and leading questions. Whenever a child is interviewed and taped to prove a case of child abuse, and this is exactly what Mrs. Morvan was trying to prove in a civil context, extensive precautions must be taken. LSA-R.S. 15:440.5; State v. R.C., 494 So.2d 1350 (La.App. 2d Cir.1986). Because they tend to assure the reliability of a child's testimony, these guidelines are persuasive in the instant case. However, not one of these guidelines was observed and the tape generally lacks all indicia of reliability. These circumstances lead us to have grave doubts about the tape, and the trial court was justified in refusing to admit it. We note parenthetically that we have listened, or attempted to listen, to both tapes. What they say is repetitive of what Mrs. Morvan had alleged to the juvenile authorities before and after suit was filed. We also note that the tape was presented to the DHHR social worker who prepared the home studies and found the Green home acceptable. The trial court's refusal to admit the tape was not an abuse of discretion.
Mrs. Morvan's main argument is that the trial court erred in failing to find that Steve Green had sexually abused Angela. A finding of abuse would have made the Green home an unsuitable environment, detrimental to Angela's best interest. Cf. State in the Matter of Williams, 447 So.2d 1211 (La.App. 5th Cir. 1984), writ denied, 449 So.2d 1357 (La. 1984). The trial court's conclusions were based on a factual determination that there had been no abuse. A trial court's findings of fact are entitled to great deference. We review them according to guidelines laid out in Arceneaux v. Domingue, 365 So.2d at 1333:
[T]he appellate court should not disturb this factual finding in the absence of manifest error. * * * "Manifestly erroneous," in its simplest terms, means "clearly wrong." * * * [T]he appellate court should not disturb such a finding of fact unless it is clearly wrong. Therefore, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous).
We have carefully studied all the evidence in this case. There is really only one source in favor of Mrs. Morvan's position, and that is Mrs. Morvan's own filings and testimony. Although they occupy over 300 transcript pages, Mrs. Morvan's handwritten filings are essentially repetitive of one allegation. Her long declamations against the system of justice, the scriptural citations, the treatise on angels and the myriad photographs do not bear on the one genuine issue. Her reiterated allegations of child abuse were based entirely on hearsay, and when she tried to recite the same facts at trial, she was promptly silenced by the appropriate objections. Thus Mrs. Morvan's writings and testimony, though voluminous and interesting, weigh very little in favor of finding manifest error. The only other scrap of evidence that might have favored her position was the medical report from Dr. Shaw. This, however, was properly excluded for reasons already discussed. Even if it had been admitted, as by stipulation, its impact would have been equivocal at best.
By contrast, the trial court's findings were substantiated by the great weight of the evidence. The confidential DHHR reports are objective, thorough, and they absolve the Greens of the allegations. Our reading of these documents convinces us that the trial court's assessment was not manifestly erroneous. More importantly, the credibility of the witnesses, in which the trial court has the greatest discretion, was determinative. Steve Green categorically denied every allegation and expressed his intent to be a good father to Angela. The trial court found him credible and we see no reason to disturb the finding. Helen added that if she had any suspicions of child abuse, she would move away. R.p. 383. Even Mr. Morvan, in the DHHR home study, was not convinced that his *106 daughter would knowingly permit Angela to be abused.[3] This is more than enough evidence to enable us to say that the trial court's finding is not manifestly erroneous.
The trial court further found that the Green home was not deleterious to Angela's best interest. The only contrary evidence is Mrs. Morvan's testimony that the house was disorganized and messy when she visited. Helen admitted that Angela's room was disorganized that day, but explained that she and Steve had been rearranging furniture and had needed to place boxes temporarily in Angela's room. She assured the court that the place was not usually so messy. Steve also admitted that he drank a few beers, and this is no more than Mrs. Morvan accused him of, but we do not see how this very light drinking makes the home unsuitable as Mrs. Morvan seems to think. Helen also showed an insurance form covering Angela's latest trip to the dentist. The evidence amply supports the trial court's finding that the Green home was suitable.
This applicable law is LSA-C.C. art. 146 B, which provides in part:
Before the court makes any order awarding custody to a person or persons other than the parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child.
The factual findings specifically track this statute and we can find no error of law in awarding custody to the Greens. There is certainly no showing of the kind of extreme conduct necessary to remove custody from the parent. Cf. Boyett v. Boyett, supra; Gras v. Gras, 489 So.2d 1283 (La. App. 2d Cir.1986), writ denied, 493 So.2d 1222 (La. 1986); Carroll v. Carroll, 476 So.2d 976 (La.App. 1st Cir.1985). The temporary clutter and the occasional beer do not make the Green home unsuitable.
We are naturally sympathetic with Mrs. Morvan's concern for Angela. Like the trial court, we will not lightly dismiss claims of abuse. However, it seems to be no more than a fixed idea, unsupported by evidence and sustained by Mrs. Morvan's unusually great love and attachment to Angela. There is no question that Mrs. Morvan is a good, Christian grandmother who has provided an excellent home for over five years. We sincerely hope that she will transcend the present adversity and become conciliatory, making an effort to break down the barrier of obsessive attachment and protection of Angela. It would be a genuine tragedy for Mrs. Morvan to let her excellent intentions, morals and talents be diverted into the distrust and alienation that is fueled by constant accusations.
For the reasons expressed, the judgment is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Mr. Morvan was not a party to the suit.
[2] Mrs. Morvan harassed and accused investigators of trying to hide "God's truth," to "cover up" and "aid and abet" in child abuse when they disagreed with or questioned her allegations. In her "filings" in this court, she has lodged similar accusations against the trial judge.
[3] His main concerns seemed to be that the child was being allowed to sleep alone upstairs and to wear pantyhose on occasion, which he considered indecent.