528 So.2d 696 (1988)
David McMANUS and Bernice McManus, Appellees,
v.
David Leo McMANUS, Jr. and Mary Potter McManus, Appellants.
No. 19845-CW.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
Donald Joe Robinson, Monroe, for appellants.
William H. Baker, Jonesboro, for appellees.
Before MARVIN, FRED W. JONES, Jr. and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
We granted a writ in this case to consider whether the trial court erred in awarding temporary custody of minor grandchildren to grandparents upon the grandparents' petition for custody when the natural parents were still married and there was no pending proceeding for separation or divorce or a juvenile proceeding where the state was a party to the action.
David McManus, Jr. and Mary McManus were married in 1985. They were the parents of Corey (born April 1985) and Savannah (born May 1986). The family was residing in Ouachita Parish. David McManus and Bernice McManus, the parents of David McManus, Jr., were residents of Jackson Parish.
On November 20, 1987 the paternal grandmother encountered her son and his *697 family at a grocery store in Monroe. The grandmother took the two children home with her to spend the weekend. However, the grandparents refused to return the children and on November 24, 1987 filed a petition for custody in Jackson Parish alleging that the children were dirty and were not properly cared for. The district judge signed an order giving the grandparents temporary custody of the children and ordering the parents to show cause on December 7, 1987 why the grandparents should not receive permanent custody.
The parents filed exceptions of no right of action and no cause of action and improper use of summary proceedings. The prior rule was upset and refixed for December 17, 1987. On the latter date the exceptions were overruled. Testimony of only one witness, the child's mother, was heard concerning the children's living conditions. After hearing the testimony and before the other witnesses were called, the trial judge continued the hearing indefinitely. Temporary custody remained with the grandparents and the parents were granted visiting privileges. The parents then applied for the exercise of our supervisory jurisdiction.
The state has not instituted proceedings in a juvenile court to have these children declared neglected (La.R.S. 14:403) or to petition for termination of parental rights (La.R.S. 13:1601). Also see C.J.Pr. Articles 14, 17. Furthermore, the question of child custody has not been placed at issue in a separation suit or a divorce suit. See La.C.C. Articles 146, 157. Consequently, under these circumstances may grandparents petition for child custody?
This issue was addressed by our Supreme Court in Griffith v. Roy, 263 La. 712, 269 So.2d 217 (La.1972). In that case, the paternal grandfather filed suit in a civil district court alleging that the children of a mother who had been awarded provisional custody in a separation suit were neglected and that the mother was morally unfit to keep them. The grandfather prayed for permanent custody of the children. The Court noted that the constitution had established juvenile courts and these courts were vested with jurisdiction over "neglected" children. The Court found that the original custody of a child who has not been adjudicated neglected or delinquent could only be determined in a civil proceeding between the parents, when both were living, in connection with an attack upon a marital contract or after dissolution of that contract. Because custody and care of the children born of the marriage was such a vital part of the marriage contract and since the marital contract was held inviolate from attack by anyone other than the parties to it, no other person could institute a civil proceeding for child custody while that contract existed. To permit such an attack, the Court reasoned, would allow third parties to induce one of the parties to initiate a legal attack upon the marriage itself. Moreover, it would call upon the Court to exercise parental authority which then only existed in the parents. Until one of the parties attacked the marital contract, the State, through the judicial function, could interfere with that parental authority only under special laws defining neglect and delinquency, and then that function was assigned exclusively to the juvenile courts upon petition by the State in the interest of the child, and not by petition of a third party in its own interest.
The Court specifically held that in its decision, it only determined jurisdiction. The Court noted that the question of whether a third party had a right or cause of action to institute a suit which was in substance, as well as style, a civil proceeding for custody of the minor children was not before the Court.
The broad-sweeping language of the Supreme Court in Griffith was moderated in the later opinion of the Supreme Court in Wood v. Beard, 290 So.2d 675 (La.1974). In that case, the minor child had been given to the maternal grandparents for approximately one year when the mother was incarcerated. The grandparents refused to give the mother custody of her child and the mother instituted a habeas corpus proceeding. The natural parents were still married at the time of the proceedings. In that case, the Supreme Court held that when a parent competes with non-parents *698 of a child, the parents' right to custody is superior, unless the parent is unable or unfit, having forfeited parental rights.
The plaintiff-mother argued that only the juvenile courts had jurisdiction to interfere with parental authority. The Supreme Court held that this was a too narrow interpretation of the previous decision in Griffith. The Court noted that it had previously held that the juvenile courts do not have jurisdiction over a dispute between private litigants for custody of a child which was not within the purview of an action to terminate parental rights. The Court stated that the thrust of plaintiffs' argument was that no court could inquire into the fitness of a parent seeking custody while the marriage was in existence and there was no pending separation or divorce action. The Court stated that this argument ignored the universally recognized proposition that the State and its courts were always concerned with the welfare of the child. The Court concluded that the district court was not without jurisdiction to consider the fitness of the mother in a habeas corpus action brought by her.
See also Girouard v. Halpin, 368 So.2d 1139 (La.App. 3d Cir.1979), writ denied 369 So.2d 1377 (La.1979), wherein a step-sister and her husband were granted custody of the minor child although the natural parents were still married. However, the minor child had been residing with the step-sister and husband with the consent of the mother for a significant period of time before the proceedings were instituted.
The rule enunciated in Wood v. Beard, supra, that in order to award custody to a non-parent, the Court must find the parent unable or unfit to provide a home for the child or find a forfeiture by the parent of the paramount or superior parental right to custody was changed somewhat by the passage of Act 307 of 1982 which amended La.C.C. Article 146.
As noted in Boyett v. Boyett, 448 So.2d 819 (La.App. 2d Cir.1984), the primary concern in making custody awards to a non-parent in preference to the parent is the welfare or best interest of the child, not simply the enforcement of parental rights.
Under the article as amended, the primary concern remained the same, but the courts were being given more freedom or latitude to pursue the goal of insuring that the best interest of the child is served in resolving custody disputes between the parent and non-parent litigants. An award of custody to someone other than a parent could now be made if it was found that the award of custody to the parent would be detrimental to the child and that the award to the non-parent was required to serve the child's best interest. The Court concluded that under La.C.C. Article 146, a parent now enjoyed a paramount right of custody which could be outweighed by a sufficiently grave detriment to the child's best interest which required that custody be awarded to a non-parent.
See also Tyler v. Tyler, 513 So.2d 512 (La.App. 2d Cir.1987); Gras v. Gras, 489 So.2d 1283 (La.App. 2d Cir.1986), writ denied 493 So.2d 1222 (La.1986); Recknagel v. Roberts, 465 So.2d 844 (La.App. 2d Cir. 1985), writ denied, 468 So.2d 570 (La.1985) and 468 So.2d 579 (La.1985); and, Batiste v. Guillory, 479 So.2d 1044 (La.App. 3d Cir.1985).
To summarize, our jurisprudence relating to this issue generally involves situations where the parents are separated or divorced, or the children have resided with a non-parent for some length of time before custody was sought. This case falls into neither of those categories. On the other hand, there is the underlying principle that our courts are always concerned with the welfare of minor children. However, here the grandparents have not alleged the existence of unusual circumstances that would justify the invocation of this rule. They simply asserted that the children were dirty and improperly supervised. Apparently, no complaint was made to the appropriate state agency which deals with the investigation of child neglect charges. Under the circumstances, we find that the grandparents have not stated a cause of action. The trial judge erred in overruling this exception.
It is also well-settled that an ex parte custody order granted by a trial court without *699 notice, service of pleadings and without affording a hearing to the parents having custody of the child is null and without effect. Guillory v. LaFleur, 469 So.2d 444 (La.App. 3d Cir.1985); Hatchett v. Hatchett, 449 So.2d 626 (La.App. 1st Cir. 1984); Saizan v. Saizan, 311 So.2d 281 (La.App. 1st Cir.1974).
For these reasons, the writ issued is made peremptory; the order granting the grandparents temporary custody is vacated; the exception of no cause of action is sustained and the suit is dismissed. All costs, both in the trial court and on appeal, are assessed to the plaintiffs-grandparents.