550 So.2d 918 (1989)
S.J., Plaintiff/Appellant,
v.
S.M., Defendant/Appellee.
No. 20,772-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
Writ Denied December 1, 1989.
Richard Ducote and Associates by Richard Ducote, New Orleans, for plaintiff/appellant. *919 Sockrider, Bolin and Anglin by H.F. Sockrider, Jr., Shreveport, for defendant/appellee.
Before HALL, MARVIN and NORRIS, JJ.
HALL, Chief Judge.
This is the second appeal to be considered by this court in a bitter, ongoing child custody dispute which involves continuing allegations of sexual abuse of a young boy (B.S.J.) by his stepfather (P.M.). In this proceeding, the natural father (S.J.) appeals the judgment of the trial court maintaining sole custody in the mother (S.M.), restricting the father's visitation rights to supervised visitation, and denying the father's request to have the child examined once again by new experts chosen by the father. The mother answered the appeal challenging the trial court's granting of restricted visitation to the father, urging instead the father's visitation rights be terminated. She also appeals the judgment denying her motion to hold the father in contempt of court and her petition to enjoin a civil damage action commenced by the father in another parish also alleging sexual abuse by the stepfather. For the reasons expressed herein, we affirm the trial court's judgment.
In the first appeal, this court in April, 1987 affirmed the trial court's judgment awarding sole custody of B.S.J., then almost six years old, to the mother with the father having specified visitation rights. S.J. v. S.M. 505 So.2d 897 (La.App. 2d Cir. 1987), writ denied 507 So.2d 229 (La.1987). The prior proceeding also involved allegations of sexual abuse of the minor child by the stepfather. The facts of the case to that point in time are set forth in greater detail in our previous opinion and are only briefly summarized here. An evaluation team consisting of mental health professionals was appointed by the court to evaluate the allegations and report to the court. The child was hospitalized for a lengthy period of time during the evaluations. The child was subjected to repeated interviews and examinations. The examinations included a proctoscope examination and a laryngoscopy in Bossier Parish, and physical examinations both in Shreveport and in Monroe. The child was interviewed by police and D.H.H.R. personnel in both Bossier and Monroe. The child was placed in foster-care for a period of approximately eight months during this time. After the presentation of the evidence and the testimony, including the evaluation team report presented in chambers, the trial court found that sexual abuse by the stepfather had not been proved and awarded sole custody to the mother with specific visitation rights to the father with a further provision that the paternal grandparents (who had taken the child to be examined in West Monroe) were not to be left alone with the child.
Approximately one month after this court's opinion was rendered in the first appeal the child was picked up by his father on May 8, 1987 for his weekend visit, and sexual abuse was once more reported by the paternal family. The child was taken to LSU Medical Center in Shreveport, Louisiana and then to another hospital in West Monroe where he was examined by Dr. Coleman. The father was told to take the child on Monday to the sheriff's department for a video taped interview. He and the stepmother kept the child in a motel in Bossier City over the weekend, including Sunday night. The videotape interview was done on Monday. After the child was not returned to the mother on Sunday night in accord with the visitation schedule, she learned of the new investigation Monday through the Bossier Parish District Attorney's office. The child was returned to the mother that evening by Sgt. Via of the Ouachita Parish Sheriff Office pursuant to a court order issued by a Ouachita Parish judge.
After the above incidents, the various motions and actions which are the subject of this proceeding were filed.
All of the pending matters were tried together in an extended trial in November 1987, February, March and April, 1988. Most of the witnesses from the first trial testified again, reviewing events and evaluations made prior to the first trial as well *920 as events and evaluations after the May 1987 incident. The father, with new counsel, offered additional evidence and expert witnesses. After trial, the district court rendered extensive, thoughtful, written reasons for judgment. He concluded that neither of the two scenarios advanced by counsel was correct; instead the correct scenario was that that P.M. has not abused B.S.J. but the paternal family genuinely believes that he has.

CUSTODY
The father contends the trial court erred in determining the child had not been the subject of sexual abuse by his stepfather, asserting the trial court: (1) erroneously searched for any alternative to sexual abuse, grasping at the explanation of fecal hoarding in the first proceeding and coaching by the paternal family in the current proceeding; (2) erroneously relied on P.M. not fitting a pedophile profile to substantiate his innocence in the first trial; (3) erroneously relied upon expert witnesses with the least qualifications in evaluating sexual abuse, namely the original team of mental health professionals chosen by both parties and appointed by the court, Drs. Seiden, Goebel, Susan Vigen and Mark Vigen, and Dr. Boyle and Sue James, who were not members of the team; (4) erroneously did not credit the testimony of experts Dr. Hickock, Dr. Harrison, Dr. Meade O'Boyle and Corporal Beth Lord and find that B.S.J. had been abused by P.M.; (5) erroneously did not find the mother's allegation that the paternal family inserted "blue objects" in the child's rectum was a cover up to conceal P.M.'s abuse of the child; (6) erroneously accepted the testimony of the mother and stepfather over that of the father and other members of the paternal family.
It is on the basis of sexual abuse by the stepfather that the father contends the child's custody should be transferred to him.
On appeal we are required to give great weight to the factual conclusions of the trial court where they are based on reasonable evaluations for credibility and reasonable inferences of fact. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); In the Matter of Fox, 504 So.2d 101 (La.App. 2d Cir.1987), writ denied 504 So.2d 556 (1987).
As to the sexual abuse alleged to have occurred on May 8, 1987, which triggered the filings leading to the second trial, the evidence is insufficient to prove that the child was sexually abused on that occasion. The father and his wife testified that when the child was delivered to them on that date he had scratches and bruises, had a fishy smelling odor, and that he told the stepmother the stepfather had done it again. The child was examined by Dr. Coleman in the emergency room of a West Monroe hospital. The doctor found no physical evidence of sexual abuse. The scratches and bruises were minor. The child made no complaints about the stepfather until prompted by the father to tell the truth. During Sgt. Via's videotape interview, the child did not complain of any recent sexual abuse although he made some references to past activity. Sgt. Via's file was later closed for lack of physical evidence of abuse. Dr. Boyle, who had counselled with the child since July 1986, had seen the child on the afternoon of May 8 and saw no indication of any recent abuse. The child told Dr. Vigen in an interview a couple of weeks later that his father had made him tell the doctor his stepfather had abused him, but that was not true. The experts presented by the father, Drs. Hickock and Harrison, believed on the basis of their review of the entire history including the taped interview by Sgt. Via, that sexual abuse had occurred, but they had not examined or interviewed the child and their testimony was not directed specifically to the alleged May 8, incident. As stated above, the evidence was clearly insufficient to prove sexual abuse of the child by the stepfather on the specific occasion in May, 1987.
Although the alleged May, 1987 incident was the precipitating factor for the second trial, the matters raised at the first trial were gone into again. Most of the witnesses who testified at the first trial testified again as to earlier events and earlier *921 evaluations. The team originally appointed by the court remained of the opinion that the child had not been sexually abused by the stepfather. The experts presented by the father, Drs. Hickock and Harrison, were of the opinion that the original evaluation team lacked sufficient qualifications in the field of child sexual abuse. Their opinion, based on a review of the history of the case, was that the child had been abused. While their qualifications as experts are substantial, it must be noted that they never examined or interviewed the child or any of the other key figures in the case other than the paternal family. Dr. O'Boyle, who testified at the first trial as to her opinion that the child had been abused, adhered to her original opinion.
Dealing specifically with appellant's arguments, (1) we are not impressed by appellant's argument that the trial court followed natural inclinations to avoid finding sexual abuse and grasped for other alternatives; (2) there is no indication that the court gave undue weight to the expert testimony that the stepfather did not fit a pedophile profile; (3) and (4) the court weighed the credibility of all the expert witnesses and did not err in giving greater weight to the opinions of the evaluating team who dealt with the situation early on and whose examinations and interviews were thorough; (5) the evidence about "blue objects" was insignificant and of no consequence to either side of the case; and (6) weighing the credibility of the lay witnesses was particularly within the province of the trial court.
The trial court carefully considered all of the evidence and made the determination that the stepfather has not abused the child. This court has carefully reviewed the record and does not find that the trial court's finding of fact is clearly wrong or manifestly erroneous. Given this conclusion, the trial court was clearly correct in continuing sole custody with the mother and in granting supervised visitation rights to the father.

COLPOSCOPE EXAMINATION
The father assigns as error the trial court's denial of the father's motion to have the child examined by a colposcope examination. A colposcope is a medical examination tool which when inserted into a body opening allows the physician to see the area in question under magnification. Some colposcopes are equipped to photograph the area in question for later study.
The father urges that a colposcope examination of B.S.J. might reveal evidence of sexual abuse. The father in brief concedes that an examination by colposcope might not settle the issue. Not all colposcopic examinations reveal physical evidence of sexual abuse. Evidence does not always exist, particularly in male victims. Also medical testimony indicated that injuries revealed by colposcopic examination could have other causes besides sexual abuse. The father's expert, Dr. Hickock, a pediatrician and an expert in the area of child sexual abuse, testified that physical damage does not necessarily result from sexual abuse.
The father asserts that the invasiveness of the examination is minimal and since the examination might reveal evidence of sexual abuse it should be performed. B.S.J. has been subjected to a proctoscope examination, as well as both visual and digital examinations of his rectal area. Members of the evaluation team and Dr. Boyle all testified that further examinations would be detrimental to the child. The trial court determined that further examinations would not be in the best interest of the child. Considering the extensive examinations the child has undergone over an extended period of time, and the uncertainty that further examinations would produce medically helpful evidence, we cannot say that the trial court's decision was clearly erroneous or an abuse of discretion.

VISITATION
The mother answers the father's appeal asserting the trial court erred in not terminating the father's visitation rights with the child. The mother asserts that if the visitation privileges are not terminated the father will continue to make allegations of sexual abuse of the child by the stepfather *922 and continue to subject the child to repeated physical and psychological examinations. The trial court concluded that termination of the father's visitation rights would not be in the best interest of the child. Considering the determination by the trial court of the father's sincerity and concern for the child and with the court's observation of the parents at trial, we cannot say his determination to allow visitation subject to supervision and restriction is an abuse of his great discretion.

CONTEMPT
The mother filed a motion requesting the father be held in contempt of court for various violations of the trial court's order, including solicitation of the child's response to questions concerning P.M. and sexual abuse. The trial court determined that to hold S.J. in contempt of court would serve no useful purpose but would increase the acrimonious feelings between the parties. Considering the trial court's determination of the sincerity of the beliefs held by the father, we cannot say the trial court erred in not holding the father in contempt of court.

INJUNCTION
The mother also requested the trial court to enjoin the father from proceeding with an action for damages filed in another district court against the court appointed evaluation team, mother, and stepfather raising essentially the same allegations of sexual abuse of the minor by the stepfather. The trial court declined to issue such an injunction stating that he knew of no authority to enjoin such a proceeding. The mother asserts that if the proceeding is not enjoined she, the stepfather and the child will all suffer irreparable injury.
The granting or denial of a request for a preliminary injunction lies within the sound discretion of the trial court. In this case the trial court did not err. As a general rule a pending action cannot be enjoined in a separate action. Levee Construction Co., Inc. v. Equitable Casualty & Surety Co. of New York, 173 La. 648, 138 So. 431 (1931); Karst v. Ward-Steinman, 469 So.2d 440 (La.App. 3d Cir.1985); Muller v. Landry, 170 So.2d 922 (La.App. 3d Cir. 1965).

CONCLUSION
The trial court made factual determinations and exercised its great discretion in ruling on this troubling custody case. We cannot say from our review of the record that the trial court was clearly wrong in its factual determinations or abused its discretion. Therefore, we affirm the trial court's judgment, at appellant's costs.
AFFIRMED.