511 So.2d 868 (1987)
Nesbit K. PARKER
v.
Myrtle C. Payton and Leonard J. PAYTON, Sr.
No. C-7943.
Court of Appeal of Louisiana, Fourth Circuit.
August 28, 1987.
*869 Leonard O. Parker, Jr., New Orleans, for plaintiff.
D. Majeeda Snead, New Orleans Legal Assistance Corp., New Orleans, for defendants.
Before GARRISON, BARRY and LOBRANO, JJ.
BARRY, Judge.
Plaintiff sought exercise of our supervisory jurisdiction to review a final and appealable judgment relating to the custody of a child over sixteen years of age. Considering the circumstances, we accepted this matter as an expedited appeal.
Nesbit Payton Parker obtained a divorce by default from Leonard Payton, Jr., on August 2, 1979. There was one child from the marriage, Salaam, who was born October 5, 1970. Nesbit Parker's petition stated that Salaam was in the custody of her paternal grandparents, Mr. and Mrs. Leonard Payton, Sr., and she prayed that the grandparents be awarded permanent custody.[1] The divorce judgment granted the elder Paytons custody of Salaam, but they were not aware of the decree.
After birth Salaam lived with her parents at her grandparents' home. Leonard Payton was in the military at that time. After the parents left to set up their home (Salaam's age at that point was between 2 and 4 years  testimony differed), Nesbit Parker testified she often left Salaam to live with the Paytons. Nesbit Parker had to work and was trying to further her education. Leonard Payton did not work steadily and had serious mental problems. Today he does not acknowledge his daughter.
Although Mrs. Payton and Nesbit Parker differ as to the circumstances of Salaam's stay, Mrs. Parker admitted that Salaam lived almost continuously with the Paytons. The child attended Catholic school and was well cared for. Mrs. Parker maintained *870 erratic contact with her daughter (mostly on special occasions).
When Salaam was in seventh grade in June, 1983 she stayed with Nesbit Parker and her soon-to-be second husband, Leonard Parker. Nesbit Parker claimed the child's move resulted from the grandfather's suggestion. The grandparents agreed to the change because they felt Salaam needed to be with her mother. Mrs. Payton testified to many disappointments the child suffered and she wanted Nesbit Parker to take an interest in the youngster.
After Nesbit Parker remarried she moved the family home away from the Payton household and Salaam was cut off from contact with her grandmother. Leonard Parker's two daughters also lived with Salaam. Salaam went to a public school and was unhappy and afraid in her mother's house because her stepfather "picked on" her constantly. Salaam ran away with one of her stepsisters. She returned to her grandmother in September, 1985 when she stayed with her aunt, Gayle Elsey, during the week and the Paytons on the weekend. The aunt later moved into the Payton house. Mrs. Payton testified she still wants Salaam to have a relationship with her mother.
Salaam and her stepsister accused Leonard Parker of sexual abuse. Salaam told the court of one "touching" incident. She also informed the judge of an argument between her stepfather and mother when he slapped his wife, pulled a gun, and caused them to leave the house overnight.
The Office of Health and Human Resources investigated the girls' allegations. It was then discovered (in October, 1985) that Mr. and Mrs. Payton had legal custody of Salaam.
Mrs. Payton testified that O.H.D. invalidated the physical abuse claims (which had not been substantiated), but the agency concluded it would be very damaging emotionally for Salaam to live with her mother and Leonard Parker. Nesbit Parker similarly testified the O.H.D. report discounted the sexual claims, but validated the findings of emotional abuse. She stated that issue was on appeal.
Mrs. Payton testified she filed for child support from Nesbit Parker in May, 1986. In June, 1986 Nesbit Parker filed a Rule for custody of Salaam. Salaam had returned to live with her grandparents since September, 1985. Juvenile court set monthly support of $340. According to Mrs. Payton, Nesbit Parker visited Salaam once and had not telephoned during that time. Nesbit Parker stated the child's grades had worsened and her attendance was low since her return to the grandparents; however, Mrs. Payton attributed that and Salaam's emotional distress to this lawsuit.
The hearing on the custody rule was held in chambers on November 18, 1986. After testimony by Leonard Payton, Sr., Myrtle Payton, Salaam Payton and Nesbit Parker, the court inquired as to what other witnesses Leonard Parker, Mrs. Parker's counsel (and husband), would call. He stated he would take the stand to rebut the child's sexual allegations made against him, and to state that the emotional abuse issue was on appeal and to have a O.H.D. representative to so state. He would have called Gayle Elsey, but the Paytons had testified she was living in the Payton household. Mr. Parker conceded the testimony would have been basically repetitious, and he confirmed during oral argument before this court that no new evidence would have been presented.
The Paytons moved for a directed verdict on the grounds that Mrs. Parker had not carried her burden. On November 25, 1986 the court rendered judgment in the Paytons' favor denying the change of custody. Subsequently, on May 12, 1987, the court granted Mrs. Parker's motion for a new trial admittedly for the purpose of holding the matter open for evidence of a previously court-ordered evaluation of Salaam. On May 18, 1987 the court reinstated the November 25, 1986 judgment denying the change of custody.[2]
*871 On May 12, 1987 James McDonnell, MSW, testified regarding his April 20, 1987 report on Salaam. He concluded Salaam had no relationship with her natural father, little or no relationship with her natural mother (because Salaam does not know her), a negative relationship with her grandfather, and a negative and hostile relationship with her stepfather. She indicated she would run away if placed with her mother and Leonard Parker. Salaam had a positive, warm, close, very good nurturing relationship with her grandmother, Myrtle Payton. Mr. McDonnell recommended that Salaam remain in her grandmother's custody but be allowed liberal visitation with her mother.
The plaintiff/applicant/appellant argues the trial court erred by granting a directed verdict in a custody matter and misapplied the burden of proof when denying her rule to change custody.
Plaintiff cites Owen v. Gallien, 477 So.2d 1240 (La.App. 3rd Cir.1985), where the appellee moved for a directed verdict after the appellant's case in chief in a custody proceeding. The trial court considered the motion as one for dismissal and granted it since the burden of proof had not been carried. The Third Circuit found the children to be the real parties in interest in a custody proceeding and the determination of which custodial arrangement will serve their best interest should not be made until all evidence has been adduced. The court (found granting a dismissal inappropriate) declared:
[I]rrespective of whether an initial award of custody is involved or a change of custody is sought the competing parties share equally the burden of establishing by a preponderance of the evidence the custodial arrangement which will serve the interest of the children.
477 So.2d at 1244.
Although the trial court here granted a directed verdict, the judge stated: "So essentially, whether I at this point grant a judgment, in other words, grant her motion for directed verdict, I've heard her side, the other side of the case, except for a lot of additional witnesses, for the most part." The court discussed Owen and stated it was not persuasive "inasmuch as the testimony that the court has heard amounts to both  to date, the Court has heard both sides of the case, even though it is presented primarily or entirely upon the testimony of that of the plaintiff's side of the case." Thus, the trial court determined custody based on all of the available evidence and witnesses. Plaintiff's counsel agreed that the record is complete. We are satisfied that there is no error in labeling the judgment a directed verdict.
Next, Nesbit Parker argues the court incorrectly placed the burden upon her, the natural parent, to prove by clear and convincing evidence that continuation of the custody (under a considered decree of permanent custody) was so deleterious to the child as to justify modification of the custody decree under Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). She submits the burden should have rested on the non-parent to prove her unfit or that she had forfeited her parental rights.
The trial court rendered judgment, granted a motion for a new trial, heard additional evidence, discussed the burden of proof and jurisprudence for the record, and reinstated the original judgment.[3] The judge notes the original custody award was granted to the grandparents pursuant to the mother's petition in 1979. Although the judge acknowledges the clear and convincing evidence burden of Bergeron, he clarified that Bergeron applied to cases involving a considered custody decree. The court noted that the 1979 decree had not been "considered" and the record contains no transcript of the default proceeding. The court stated the mother had not presented anything close to clear and convincing or even a preponderance of the evidence to establish custody should be changed. Pre-Bergeron the party seeking a modification of a child custody judgment was required to show that a change in *872 circumstances materally affecting the welfare of the child had occurred. Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972).
The trial court was well aware of the long standing and the well-settled jurisprudence that in a custody contest between a parent and a non-parent, the parent enjoys a superior right to custody and must be proven unfit or to have forfeited his/her parental rights to deprive him/her of custody. Wood v. Beard, 290 So.2d 675 (La. 1974); Guidry v. Guidry, 441 So.2d 384 (La.App. 5th Cir.1983).
La.C.C. Art. 146 B provides:
Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings.
As amended by 1982 La. Acts, No. 307, Article 146 provides that the parent enjoys a paramount right of custody which can be outweighed by a sufficiently grave detriment to the child's interest. The burden is on the non-parent to prove that a grant of custody to the parent would be detrimental to the child and the award to the non-parent is required to serve the best interest of the child. Boyett v. Boyett, 448 So.2d 819 (La.App. 2d Cir.1984).
This expands the jurisprudential rule of Wood v. Beard, supra, and allows the courts to go beyond the considerations of Wood. Recknagel v. Roberts, 465 So.2d 844 (La.App. 2d Cir.1985), writ denied 468 So.2d 570, 579 (La.1985). There was a change in the prior law which allowed custody to non-parents only when a parent was unfit or had forfeited parental rights. The use of the general term "detrimental" in the 1982 Act embraced a wider range of situations. The amendment allowed more freedom to pursue the primary consideration in custody cases  the child's best interest. Carroll v. Carroll, 476 So.2d 976 (La.App. 1st Cir.1985).
The trial judge is allowed to consider a multitude of factors in non-parent versus parent disputes. The applicable standard can be rephrased to produce a test that would require the court to determine whether granting a custody to the natural parent would be harmful to the child. Batiste v. Guillory, 479 So.2d 1044 (La.App. 3rd Cir.1985). See also Gordy v. Langner, 502 So.2d 583 (La.App. 3rd Cir.1987), writ denied 503 So.2d 294 (La.1987).
The best interest of the child is the sole criterion under La.C.C. Art. 146. Turner v. Turner, 455 So.2d 1374 (La. 1984). The trial court cited cases which have upheld granting custody to non-parents and grandparents instead of parents. Carroll v. Carroll, supra; Anderson v. Anderson, 469 So.2d 44 (La. App. 1st Cir. 1985), writ denied 470 So.2d 883 (La.1985); Johnson on behalf of Johnson v. Earls, 464 So.2d 463 (La.App. 1st Cir.1985).
The trial court declared the tests of article 146 B had been met, that changing custody to the mother would be detrimental to the child, and the award to the non-parents was necessary for Salaam's best interest. Salaam had lived almost her entire life with the Paytons except during 1983-1985. The judge noted it would be in Salaam's best interest to have regular visitation with her mother.
The trial court heard all of the available and necessary testimony, the feelings of both the mother and the grandmother, considered all the factors including the report of the social worker, and clearly determined custody based on the best interests of Salaam. That determination must be given great weight and will be overturned only when there is a clear abuse of discretion. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Guidry v. Guidry, supra.
We find no error, manifest or otherwise, in denying a custody change.
The judgment is affirmed.
AFFIRMED.

*873 ADDENDUM

Civil District Court for the Parish of Orleans

State of Louisiana

Domestic Relations Section No. 2

Division "L"

Nesbit Kelly Payton

versus

Leonard Joseph Payton, Jr.

No. 78-14549

REASONS FOR JUDGMENT
By default judgment dated 2 August 1979 obtained by Nesbit Kelly Payton the custody, care and control of Salaam Nesbit Payton (now age 16) was granted to Mr. and Mrs. Leonard J. Payton, Sr., Salaam's paternal grandparents, by Nesbit Kelly Payton. On 3 June 1986, Nesbit Kelly Payton, the mother of the child, filed the present rule to change custody of the child to herself.
This Court is mandated to determine that which is in the best interest of the child. Turner v. Turner, 455 So.2d 1374 (La. 1984). The test for change of custody under Bergeron v. Bergeron, 492 So.2d 1193 (La.1986) is clear and convincing evidence. Although Bergeron deals with a considered custody decree, here the natural mother who originally wanted the defendants-in-rule to have custody is seeking a change. See also In re: Custody of Richard Clayton Reed, No. 86-3919 on the docket of this Court. If the provisions of C.C. art. 146(C)(2) applied to this case, the Court finds that defendants-in-rule are better able to meet the tests which in this Court's opinion are in the best interest of Salaam. Thus the plaintiff-in-rule has not presented anything close to clear and convincing evidence or even a preponderance of the evidence to establish that custody should be changed. The child has lived almost her entire life with the defendants-in-rule except for a period of time of less than two years from 1983-85. Plaintiff-in-rule has not carried her burden of proof even if one excludes the testimony of Salaam.
The Court does not address the issue of visitation; that issue is not before the Court.
Judgment will be entered accordingly.
 /s/ Max N. Tobias, Jr.
 JUDGE
25 November, 1986.
NOTES
[1] Although Nesbit Parker alleges she was unaware of the prayer and the subsequent award of custody to the paternal grandparents, she filed an amended petition which stated custody was with Leonard Payton, Jr., and he should be granted custody. She later filed a motion to withdraw the amendment.
[2] Mrs. Parker filed a motion to appeal the November 25, 1986 and May 18, 1987 judgments. (CA-8233).
[3] The trial judge's reasons are attached as an Addendum.