ARMSTRONG, Judge.
J.C. appeals a judgment of the District Court denying him visitation privileges with his two minor children.
C.C. filed for a legal separation from her husband, J.C., on February 29, 1984. The parties agreed that Mr. C. would have fairly liberal visitation rights. In March 1984, their younger child, age 3, began to complain of a pain in her vaginal area after returning home from a visit with her father. Mrs. C. examined the child and discovered redness and bruises in the child’s vaginal area. The child and her five-year-old sister were very secretive about the injury. When questioned, the three-year-old insisted that she had fallen on her doll. The next day the child’s teacher reported that the child had cried all day and complained of pain in her vagina, legs and buttocks. Mrs. C. then made an appointment with Dr. Angelo Giorlando, the children’s pediatrician. Dr. Giorlando discovered two bruises on the right and left buttocks and a ⅛" abrasion or scratch inside the labia on the left vaginal mucosa. The child then told her mother that “Daddy scratched me, but he didn’t mean to.”
Upon further questioning the children gradually revealed to their mother and grandmother that Mr. C. scratched the child while playing the “Boody game” (“Game”). The children explained that when their mother was out working as a private duty nurse they would sometimes get undressed and lay on Mrs. C.’s bed with Mr. C. Mr. C. would then play with the children’s genitals, expose himself and have the children touch him.
Mr. C. denied having ever touched the children improperly and explained that the three-year-old’s “injury” was a result of falling on top of a large garden planter.
The mother and grandmother then contacted the New Orleans Police Department’s Child Abuse Unit. The children were interviewed by Detective Ron Canna-tella and by a crisis-intervention worker from the Office of Human Development, Eleanor Glapion. Both girls were examined by the coroner, Dr. Frank Minyard. Although criminal charges were not filed against Mr. C., both Detective Cannatella and Mrs. Glapion informed Mrs. C. that if Mr. C. had any further contact with the children O.H.D. would place the children in foster care. Mrs. C. immediately terminated all visitation between the girls and their father.
Mr. C. attempted to regain visitation privileges by filing several rules to show cause in the pending separation and divorce suit.
On June 21, 1984, the district court awarded temporary custody of the children to Mrs. C. The court ordered Mr. C. to refrain from any contact with the children until after evaluations were completed on all of the family members, including J.C. After the completion of the psychological evaluations J.C. was given limited visitation but only in the presence of a neutral-party supervisor.
In March 1985 children informed their mother that they had gotten locked in the bathroom of their grandfather’s house and that the door had to be opened with a screwdriver. The children reported that they were in the bathroom with the supervisor’s children when Mr. C. came in and wanted to play a “pretend boody game.” Mr. C. allegedly hid in the shower while the door was forced open from the outside.
This incident was denied by Mr. C.’s father and the visitation supervisor, Pearl Latour, both of whom were in the house when the incident allegedly occurred. *49 Nonetheless, Mrs. C. terminated all visitation and initiated further proceedings against Mr. C. New evaluations were ordered for Mr. C. and the children.
A judgment of divorce was granted to the C.’s on December 12, 1986. Extensive hearings were later conducted relative to the pending rules for custody and visitation. On February 2, 1987 the District Court terminated Mr. C.’s visitation rights until he should complete a recognized parenting course and undergo extensive psychotherapy. Visitation would be restored only upon the recommendation of the children’s therapist. It is from this judgment that J.C. now appeals.
The sole issue presented for review is whether or not the trial judge abused his discretion in denying J.C.’s visitation rights.
La.C.C. Art. 147 states in part:
Whenever the court finds by a preponderance of evidence that a parent has subjected his or her child to cruel physical abuse, or sexual abuse or exploitation, the court shall prohibit visitation between the abusive parent and the abused child until such parent proves that visitation would not cause physical, emotional, or psychological damage to the child. Should visitation be allowed, the court shall order such restrictions, conditions and safeguards necessary to minimize any risk of harm to the child.
It is clear that La.C.C. Art. 147 mandates a prohibition of visitation rights whenever the court finds by a preponderance of the evidence that a parent has abused his children. The prohibition under Art. 147 is not discretionary as it is in LSA-R.S. 9:574, a similar statute also enacted by the legislature in 1986. Thus our task on appeal is to determine whether the denial of Appellant’s visitation rights was supported by a preponderance of the evidence such as would trigger the mandate of La.C.C. Art. 147.
The record in this case is extensive. Testimony was taken over a four-day period during which the trial court had ample time to observe and assess the witnesses and parties. The physicians, psychiatrist, psychologist, social workers and law enforcement professionals who either examined, evaluated or interviewed the children testified that the girls were both credible and consistent in their version of the facts. These professionals agreed that the girls’ behavior, comments and physical condition were strongly suggestive of inappropriate sexual contact between the children and their father.
Dr. Frank Minyard, Dr. Douglas Pool, a child psychiatrist, and Dr. Edward Shwery, a child psychologist and expert in child abuse cases, testified that it was highly unlikely that children of such tender age would or could make up such a story.
Mrs. C. testified that both children began to experience behavioral changes after the incidents, e.g. urinating inappropriately, hyperactivity, inattention and disruptiveness in school. She further testified that the younger child had developed a masturbation problem as early as 1983. Dr. Pool testified that the younger child associated masturbation with the “game,” and that in his opinion the child’s excessive masturbation resulted from being sexually stimulated.
Dr. Edward Shwery, after evaluating Mr. C. concluded that the behavioral interactions between Mr. C. and his children were indicative of inappropriate physical contacts probably of a sexual nature.
Mr. C. denied all of the allegations and maintained that the children’s story was “suggested” to them by their mother and grandmother. The experts admitted that “suggestion” was possible but found no evidence to support such a claim.
Both Dr. Minyard and Dr. Giorlando agreed that it was unlikely that the three-year-old could have sustained her injuries in the manner described by Mr. C. After considering the testimony and after viewing the planter the trial judge concluded that Mr. C’s version of the cause of the injury was simply not credible.
As an appellate court, we are required to give great weight to factual conclusions of the trial courts which are based upon reasonable evaluations of credibility and rea *50 sonable inferences of fact. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); State In re Interest of R.W. v. J.L.W., 491 So.2d 652 (La.App. 2nd Cir.1986), writ denied 493 So.2d 649 (La.1986). Such a determination will be overturned only when there is a clear abuse of discretion. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Parker v. Payton, 511 So.2d 868 (La.App. 4 Cir.1987).
Applying the preponderance of the evidence standard as set forth in La.C.C. Art. 147, and having reviewed the testimony and evidence presented in this case, we do not find that the trial court abused its discretion in its finding that it is more likely than not that J.C. sexually abused his children, thus forfeiting his visitation rights. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.