584 So.2d 344 (1991)
Edward SCHLOEGEL
v.
Elizabeth Nettle, Wife of Edward SCHLOEGEL.
No. 89-CA-1753.
Court of Appeal of Louisiana, Fourth Circuit.
July 16, 1991.
Charles M. Stevenson, Chalmette, for plaintiff/appellant.
*345 Herman M. Schroeder, New Orleans, for defendant/appellant.
Before SCHOTT, C.J., and WILLIAMS and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff, Edward Schloegel, appeals the award of joint custody of his minor daughter to himself and her maternal grandmother, Georgia Clofort. The child's mother, Elizabeth Schloegel is not a party to this appeal. We now affirm the judgment of the trial court.
On November 21, 1988 plaintiff filed this action seeking separation from bed and board, protective orders and custody of his daughter, Mary Beth, then age four. In December 1988, after hearing testimony that both parents had a history of drug abuse and that Mr. Schloegel had been physically abusive to his ex-wife and her son, the trial court awarded temporary custody of Mary Beth to her maternal grandmother, Georgia Clofort. In addition, the trial court ordered Department of Health and Human Resources (DHHR) studies of the candidates for custody. After completion of the studies, plaintiff filed a rule for custody.
On July 5, 1989, the trial court, after hearing from Mr. Schloegel that he perjured himself about his drug usage at the first hearing and had failed to financially support his daughter while she lived with the grandmother, and after review of the DHHR reports, denied plaintiff's rule for sole custody, but awarded him joint custody, with physical custody remaining with the grandmother. The trial court set the terms of the sharing of custody, giving Mr. Schloegel custody of Mary Beth during the summer monthssubject to a ten-day visit with Mrs. Schloegel, every other weekend, and every other Thanksgiving and Christmas.
On appeal, Mr. Schloegel claims that the trial court erred by depriving him of his paramount right to custody of his daughter; in awarding custody to a non-parent without determining that an award of custody to him would be detrimental to Mary Beth; in not placing the burden of proof on the grandmother, Mrs. Clofort, to prove that custody to him would be detrimental to the child; in considering as a basis for awarding custody to a non-parent the bonding between Mary Beth and her grandmother and the passage of time; and in ignoring his favorable DHHR report while improperly relying on the grandmother's DHHR report. Moreover, Mr. Schloegel argues that because Mrs. Clofort, a nonparent, never formally intervened in the lawsuit, the trial court mistakenly recognized her interest in the custody suit. Finally, the plaintiff insists that the trial court erred in allowing opposing counsel to represent both his ex-wife and her mother, Georgia Clofort.
Louisiana recognizes that a parent has a paramount right to custody of his child. A parent may be deprived of his right to custody only for compelling reasons. Wood v. Beard, 290 So.2d 675 (La. 1974). Compelling reasons for depriving a parent of this right must be supported by clear and convincing evidence. Pittman v. Jones, 559 So.2d 990 (La.App. 4th Cir. 1990), writ denied, 565 So.2d 451 (La.1990).
Custody suits between parents and nonparents are governed by La.C.C. art. 131(B)[1] which provides:
Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a non-parent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child other than a statement of ultimate fact, shall not appear in the pleadings.
Thus, an award of custody to someone other than a parent can be made only if it is found that awarding custody to *346 a parent would be detrimental to, and against the best interest of, the child. There are various ways to express the standard that "custody to a parent would be detrimental to a child." It is not necessary that the trial court use the word "detrimental." Batiste v. Guillory, 479 So.2d 1044 (La.App. 3rd Cir.1985). The primary consideration in custody cases is and has always been the best interest of the child. Parker v. Payton, 511 So.2d 868 (La.App. 4th 1987). The La.C.C. art. 131(B) standard allows the court to look at a multitude of factors and a totality of circumstances in making a determination. Batiste v. Guillory, supra; Bolding v. Bolding, 532 So.2d 1199 (La.App. 2nd Cir.1988). See also Parker v. Payton, supra.
At the December 1988 trial, Mrs. Schloegel testified that plaintiff used to "beat" on her son Michael, plaintiff's stepson, "all the time." She also testified that plaintiff struck her when he was "loaded." Mrs. Schloegel stated that plaintiff used to use drugs including cocaine, speed, and PCP. She said that she left the marital abode because he was always on PCP. As of the time of trial she did not know whether plaintiff was still using drugs.
At the December 1988 trial, plaintiff testified that he had never used drugs in his life. He further denied ever beating his wife or introducing her to drugs. Plaintiff's father, Edwin Schloegel, who testified immediately following plaintiff, stated that plaintiff started using drugs when he was about sixteen years of age, and continued using them until he was in his early twenties. Plaintiff's father also admitted that he had used cocaine himself. Mrs. Clofort testified that her daughter, Elizabeth Schloegel, had used drugs when she was in her teens; she had stopped, but began using drugs again after marrying plaintiff. Mrs. Clofort stated that plaintiff had physically abused Elizabeth in her presence.
At this first trial plaintiff was questioned about a fellow church member who was living with him. Apparently, based upon statements by plaintiff's own attorney, and plaintiff's sister who testified at the second trial, the man was a convicted rapist. At one time plaintiff's daughter, Mary Beth, was living with plaintiff and this man. At the second trial plaintiff's sister testified that plaintiff had made a "mistake" in allowing this man around his daughter.
At the July 1989 trial, plaintiff admitted that he had perjured himself at the first trial when he denied ever using drugs. However, he maintained that he had not used illegal drugs for seven years, and said he was willing to undergo screening for the presence of drugs and alcohol. He said that if he obtained sole custody of Mary Beth he would send her to a school operated by his non-denominational church. Plaintiff is a born-again Christian. Plaintiff testified that Mrs. Clofort sold prescription drugs from her home, although he never personally observed drugs or money change hands. He admitted that he had not provided any financial support for his daughter during the period between the first and second trial when Mrs. Clofort had provisional custody of Mary Beth, although he claimed that he bought her clothes during this period.
At the second trial, plaintiff presented two witnesses on his behalf who were members of his church. Both of these men testified that plaintiff did not use drugs. Another individual, the director of a drug and alcohol program, testified that plaintiff doesn't use drugs anymore. All three of these witnesses were, themselves, former drug users. Plaintiff is apparently involved in preaching to others the dangers of drug abuse. Plaintiff's sister testified that her brother was last involved with drugs approximately eight years ago.
Another of plaintiff's witnesses testified that he lived with Mrs. Clofort for about one month, and had purchased prescription pain medication from her. Mrs. Clofort denied ever using or selling drugs. At the time of the second trial she was living with her husband and Mary Beth near Hammond, Louisiana. She said she had registered Mary Beth in a local elementary school located ten minutes from their home.
Mary Beth "testified" in chambers with counsel for both sides present. The child *347 repeatedly stated that she wanted to live with her mother. She said she did not wish to live with her father. At one point plaintiff's attorney asked her: "Would you like a chance to stay with your daddy for a while and visit with your mom?" Mary Beth answered yes to that structured question.
The DHHR homestudy on the Cloforts (this was conducted before they moved the Hammond area) concluded by approving placement of Mary Beth with them. The DHHR worker had some reservations, however, but only because of the Clofort's financial circumstances. The worker said, "as far as love, attention and good, clean surroundings, we could not find a better place for Mary Beth to live." As to Mr. Schloegel, the worker approved of placement with slight concerns, because plaintiff "seem[ed] to care for and love his daughter but he has not had to take care of a child alone."
Based upon this evidence, the trial court denied plaintiff's rule for sole custody, and awarded joint custody of Mary Beth to he and Mrs. Clofort.
Plaintiff argues that the trial court failed to make a determination that an award of sole custody to the father would be detrimental to the child. This assertion is not supported by the record. While the court may not have specifically used the word "detrimental," in both rulings, the court makes clear that the best interest of Mary Beth was its first consideration. See Parker v. Payton, supra.
In Thomas v. Thomas, 519 So.2d 357 (La.App. 2d Cir.1988), the appellate court affirmed an award of sole custody to the minor child's maternal grandparents, finding that it would be detrimental for the child to remain in the custody of her father who, evidence established, had regularly used marijuana in the past. In Boyett v. Boyett, 448 So.2d 819 (La.App. 2d Cir. 1984), a father's alcohol abuse was a factor considered by the court in affirming an award of sole custody of his minor daughter to her maternal grandmother. Although in the instant case there may be some question regarding the extent of Mr. Schloegel's drug usage, if any, at the time of trial, the evidence establishes a history of illegal drug use and association with drug abusers. The trial court could, and apparently did, consider this factor as weighing in favor of awarding joint custody rather than sole custody to Mr. Schloegel.
Were plaintiff to receive sole custody his family would be helping him with the child. Plaintiff's father is an admitted former drug abuser. Plaintiff is at the very least a former drug user. His friendschurch associatesappear to be former drug users and one was a convicted rapist. Plaintiff's credibility is questionable due to his perjured testimony about his former drug use. Although he claims to be a "born again Christian," he admitted that many of those similarly situated go back to the drug life. Although he professes his love for Mary Beth, he contributed no financial support to her while she lived with the Cloforts, this despite evidence that during this period the Cloforts were financially strapped. Mr. and Mrs. Clofort appear to provide a very good environment for Mary Beth.
A trial court is vested with much discretion in making a determination of child custody, and the court's decision will not be disturbed absent a clear showing of abuse of discretion. Everett v. Everett, 433 So.2d 705 (La.1983); Pittman v. Jones, supra; Johnson v. Sullivan, 545 So.2d 1169 (La. App. 4th Cir.1989). In the instant case, the trial court had clear and convincing evidence to make a determination that an award of sole custody to Mr. Schloegel was detrimental to his daughter's welfare and would not be in her best interest. We cannot say that the trial court was clearly wrong in making that determination. At the time this judgment was rendered, there was clear and convincing evidence that the best interest of Mary Beth was served by awarding joint custody to plaintiff and Mrs. Clofort, with Mrs. Clofort having primary physical custody.
We find no error with the trial court's allocation of the burden of proof. The evidence speaks for itself.
*348 Plaintiff's claim that the trial court erred in considering Mary Beth's bonding with or residing with the grandmother is without foundation. While these factors alone cannot support the award of custody to a nonparent, they may be considered by a trial court. La.C.C. art. 131(C)(2)(a) and (d) provide that the "emotional ties existing between the parties involved and the child" and the "length of time the child has lived in a stable, satisfactory environment" are to be considered in determining a child's best interest.
Mr Schloegel's argument that because Mrs. Clofort never formally intervened in the lawsuit the trial court erroneously recognized her interest is also without merit. Grandparents of a minor child need not be parties to an action for child custody in order for custody to be awarded to them. Stuckey v. Stuckey, 276 So.2d 408 (La.App. 2d Cir.1973). Moreover, this appeal is from a judgment in a rule for custody initiated by Mr. Schloegel, and to which Mrs. Clofort is a named party-defendant.[2]
Finally, Mr. Schloegel asserts that the trial court erred in allowing opposing counsel to represent both Elizabeth Schloegel and Mrs. Clofort, because both women originally sought custody of Mary Beth. Mr. Schloegel lacks standing to raise this issue, which concerns the attorney-client relationship between Elizabeth Schloegel and Mrs. Clofort and their attorney.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED
NOTES
[1] La.C.C. art. 146 was redesignated as C.C. art. 131 by the Louisiana State Law Institute pursuant to Acts 1990, No. 1008, Sec. 8, and Acts 1990, No. 1009, Sec. 10, both effective January 1, 1991.
[2] A rule for custody is a summary proceeding and the defendant is not required to file an answer. La.C.C.P. arts. 2592 and 2593.