626 So.2d 497 (1993)
Oliver WILLIAMS, Plaintiff-Appellee,
v.
Leon BERNSTINE, Jr., Defendant-Appellant.
No. 93-20.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
*498 Fred S. Gahagan, Natchitoches, for plaintiff-appellee Oliver Williams.
Stephen Adger Glassell, Shreveport, for defendant-appellant Leon Bernstine Jr.
Before GUIDRY, WOODARD and DECUIR, JJ.
GUIDRY, Judge.
In this child custody suit defendant, Leon Bernstine, Jr., appeals a judgment of the trial court awarding custody of the three minor children, Tyler Christopher Burns, Tamedria Lashun Burns, appellant's natural children, and Changela Denise Burns, a stepchild, to their maternal grandfather, Oliver Williams, plaintiff. We affirm.

UNDISPUTED FACTS
Leon Bernstine, Jr. married Carolyn Bernice Burns on May 25, 1990. At the time of the marriage, Carolyn had three children, Christopher, Tamedria and Changela. The two younger children, Christopher and Tamedria, had been fathered by Leon. The oldest child, Changela, had been fathered by a former boyfriend whose identity was not revealed in these proceedings. Leon and Carolyn separated in approximately March 1992 when Carolyn supposedly discovered Leon had been unfaithful on numerous occasions. Carolyn and the children left the matrimonial domicile and moved into an apartment.
In the early morning hours of May 31, 1992, Leon, who was a Natchitoches police officer at the time, shot Carolyn to death in the matrimonial domicile. Details of the shooting did not come to light in this proceeding. As part of the investigation of Carolyn's death, blood and urine samples were taken from Leon. Those samples tested positive for both cocaine and a marijuana metabolite, tetrahydrocannabinol. Leon submitted to retesting. The additional tests confirmed the original findings. The shooting was submitted to a grand jury who returned a no true bill. However, based on Leon's test results, he was asked to resign from the police force.
Within hours of the shooting, Leon's parents went to Carolyn's apartment where they found the three minor children asleep with the door unlocked and the lights on. They took the children to their home where they and Leon have resided since.
Plaintiff, Oliver Williams, a widower, went to the Bernstine home later that day intending to take the children to his own home. The Bernstines refused his request and this suit ensued with the trial court granting custody of all three children to Williams.
On appeal, Leon urges that the trial court erred: (1) in finding Williams was the natural grandfather of the three children; and, (2) in awarding custody to Williams.

DISPUTED FACTS
At trial, the Bernstines testified that Williams was intoxicated and verbally abusive when he came to their home the evening of his daughter's killing. Williams admits he was upset over the shooting, but denies that he was either intoxicated or abusive. The defendant also produced evidence that Williams, a stable working widower, would have to rely on his daughter, Mary Brown, who lives at home with her four-month old child and works, and his son, Willie Brown, to help provide care for the children. Both testified that they were willing, able and eager to assist their father in caring for their late sister's children.
*499 Williams married Betty May (Barbara) Brown in 1975 after the birth of four of the children. Betty's first child was Carolyn Burns. Leon testified that Carolyn told him that her father was a Ernest Burns who now lives in Texas. However, Williams claims that he was Carolyn's father and that he never even heard of a Ernest Burns. Williams said he could offer no explanation why Betty named Carolyn "Burns" rather than "Brown" as she named her other children. Williams stated that no one in the family and, up until this trial, no one in the community had ever questioned his acknowledgment of Carolyn as his daughter. He went on to say he had always held Carolyn out to be his daughter and that she was accepted as such by the family and community.
Williams' testimony as to his fathering of Carolyn was substantiated by his three other daughters and his son. It was only disputed by Leon and his parents. Unfortunately, no birth certificate could be produced for Carolyn, but her death certificate was available and listed plaintiff as her father.
The testimony as to Leon's character and fitness seemed to describe two people. The Williams-Browns' testimony characterized Leon as selfish, self-centered and irresponsible. It was alleged that he was hardly ever home; he had no time for his children; on more than one occasion he had neglected to pay the utility bill resulting in an interruption of service; and, on occasion he would come home bringing only a meal for himself. It was also alleged that when the children were left in his care, he would sometimes lock the children out of the house in order to take an undisturbed nap. All of this, of course, was denied by the Bernstines, who characterized Leon as a loving, caring and giving parent.
Leon's mother, who has had primary responsibility for the children's care since Carolyn's death, testified that she saw the children weekly while Leon and Carolyn were married. Carolyn's father and siblings testified that they had almost daily contact with the children from their birth until Carolyn's death.

THE LAW
On appeal, defendant-appellant argues that Oliver Williams failed to prove by clear and convincing evidence that he was the father of Carolyn and thus the natural grandfather of her children and entitled to priority preference in the question of Changela's custody and any preference in the award of the custody of Carolyn's two younger children.
We find appellant's argument as to Williams' burden of proof misplaced. The "clear and convincing evidence" standard is found in La.C.C. art. 209 and applies to proof offered by a child seeking to establish filiation. In this case we confront the issue of an illegitimate child being informally acknowledged by her father by being treated as his child; by his providing for her maintenance, education etc.; by his holding out to the world that she was his child; and, by acknowledging her as his child within the family. This situation is covered by La.C.C. arts. 198 and 199, which state:
Art. 198. Legitimation by subsequent marriage of parents
Illegitimate children are legitimated by the subsequent marriage of their father and mother, whenever the latter have formally or informally acknowledged them as their children, either before or after the marriage.
Art. 199. Rights of children legitimated by subsequent marriage
Children legitimated by a subsequent marriage are legitimate.
It is clear that Carolyn was informally acknowledged by Oliver Williams. Williams subsequently married Betty May Brown, Carolyn's mother, thus legitimating Carolyn. The trial judge did not err in awarding Changela's custody to plaintiff. See La.C.C. arts. 131(A)(4) and 256B.
Appellant also argues that the trial court erred in awarding the custody of Carolyn's two younger children to their grandfather in that Williams failed to prove the award of custody to appellant, their father, would be detrimental to the child.
*500 This court, in a recent case, the Matter of Stewart, 602 So.2d 212 (La.App. 3rd Cir. 1992), stated:
Our jurisprudence tells us that in a custody contest between a natural parent and a non-parent, the parent enjoys a paramount right to custody. The standard of proof required by the non-parent is a strict one; depriving a parent of the right of custody of his or her child can be done only for compelling reasons and by convincing proof that the parent is unfit or has forfeited the parental right of custody by action or omission. LaPointe v. Menard, 412 So.2d 223 (La.App. 3rd Cir.1982); Love v. Love, 536 So.2d 1278 (La.App. 3rd Cir.1988); Tutorship of Primeaux, 574 So.2d 543 (La.App. 3rd Cir.1991).
Moreover, La.C.C. art. 131B contains a dual-pronged requirement which must be met before a parent is denied custody of his child and the child is placed in the custody of a non-parent; the trial court must determine that an award of custody to the parent would be detrimental to the child and that the award of custody to a non-parent is required to serve the best interests of the child. Tutorship of Primeaux, supra. The statutory term "detrimental to the child" includes circumstances that would cause the child to suffer positive and substantial harm. Id.

The term "detrimental to the child" was explored in detail by our brethren of the Second Circuit in Bolding v. Bolding, 532 So.2d 1199 (La.App. 2d Cir.1988), wherein the court explained:
Use of the general term "detrimental" in LSA-C.C. Art. 146(B) embraces a wide range of situations and allows the court freedom to pursue the best interest of the child. Boyett v. Boyett,[[1]] supra; Parker v. Payton, 511 So.2d 868 (La.App. 4th Cir. 1987); In re Bourg,[[2]] supra. The trial court may consider a multitude of factors in disputes between parents and non-parents. Parker v. Payton, supra. In reaching a determination of the best interest of the child, the trial court must look at the totality of the circumstances and in such a review, past misconduct may form an important consideration in determining present suitability. Gordy v. Langner, supra.[[3]]
There are various ways to express the standard that custody to a parent would be detrimental to the child, including a finding that an award of custody to a parent would be harmful to the child. Batiste v. Guillory, supra[[4]]. The standard is no longer limited to a finding that the parent is unable or unfit to have custody of the child. Consideration is also given to aspects of the physical, mental, or emotional well-being of the child. In re Bourg, supra.
In this case it is undisputed that the defendant, Leon Bernstine, Jr., shot his wife to death. The trial judge, in orally giving his reasons for judgment, stated that he accepted as truthful the testimony concerning Leon's locking the children out of the house to sleep; failing to pay utility bills resulting in interruption of service; and, bringing home food for himself but not the other members of his family.
The trial judge further pointed out that within days of his wife's death, Leon relinquished guardianship of the children to his parents and the necessity of his parents to use day care for the children while they worked, even though Leon was unemployed, living at their home, and physically able to care for his children.
Further, the trial judge noted that at the time of his wife's death, Leon tested positive for both marijuana and cocaine and that subsequent follow-up tests produced the same results.
The trial judge also noted that not only was Leon presently unemployed, but that he had been so for months before the trial and had presented no testimony or evidence that he was even looking for a job.
Finally, the trial judge commented on the agreement in testimony by all concerned that *501 it would be detrimental to the children to split them up. In finding it would be detrimental to the children to award their father custody and in their best interest to grant plaintiff's petition, it is clear that the trial judge considered all the evidence presented and looked at the totality of the circumstances giving ample consideration not only to the physical, but also to the mental and emotional well being of the children.
It is well settled that upon appellate review, the determination of the trial court in custody matters is given great weight and the court's determination will not be disturbed on appeal absent a showing of abuse of the court's discretion. Dubois v. Dartez, 494 So.2d 572 (La.App. 3rd Cir.1986); Berzins v. Betts, 457 So.2d 282 (La.App. 3rd Cir.1984). We find no abuse of discretion in this case.
Accordingly, for these reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant, Leon Bernstine, Jr.
AFFIRMED.
NOTES
[1] 448 So.2d 819 (La.App. 2d Cir.1984).
[2] 501 So.2d 862 (La.App. 5th Cir.1987).
[3] 502 So.2d 583 (La.App. 3rd Cir.1987).
[4] 479 So.2d 1044 (La.App. 3rd Cir.1985).