VICTORY, Judge.
Plaintiff, Roosevelt Porter (“Porter”), filed a petition in rule against the defendant, Teresa Hobbs, Nee Gaines (“Hobbs”), seeking custody of their minor son, Roosevelt Lavella Gaines. The trial court awarded joint custody, with Porter being designated the primary custodian. Hobbs appeals the trial court’s judgment. We vacate and remand.

FACTS

On January 17, 1984, Roosevelt Lavella Gaines (“Roosevelt”) was born out-of-wedlock to Porter and Hobbs. His parents never married. Roosevelt has resided with his mother since birth, although no judicial award of custody was previously made to either parent. Two years prior to the birth of Roosevelt, Hobbs had borne another child out-of-wedlock, Christopher Gaines (“Christopher”), son of Robert Jones. Hobbs married Willie James Hobbs on March 3, 1992. Over the years, Porter has regularly visited with his son Roosevelt.
On June 18, 1992, Porter filed a “Petition In Rule For Child Custody,” requesting sole custody of Roosevelt, or in the alternative joint custody, with himself being the primary custodial parent. He alleged that he was entitled to an award of original custody because life in the Hobbs home was unstable, particularly because Willie Hobbs was drinking excessively, and was verbally and physically abusing Hobbs. Porter also contended that his visitation with Roosevelt had been interfered with since Hobbs’ marriage, and that she was not properly raising Roosevelt.
*753 Personal service of the citation and the custody rule was made upon Hobbs on June 26, 1992. Porter appeared at a hearing scheduled for September 21, 1992, with his attorney and witnesses, ready for trial. However, Hobbs appeared without legal representation. The clerk’s minute entry indicates that the trial court held a pre-trial conference in chambers with Hobbs, Porter and Porter’s attorney and ordered Louisiana Department of Health and Human Resources (“DHHR”) Home Studies of the Porter and Hobbs homes. The custody hearing was rescheduled for October 26, 1992. During the interim, Porter was granted weekend visitation with Roosevelt.
On October 26, 1992, Porter appeared for the rescheduled custody hearing, along with his attorney and witnesses. Again, Hobbs appeared without legal representation. The record indicates that another conference was held in chambers between the trial judge, Hobbs, Porter and his attorney. During this conference, the trial judge apparently indicated that he would rule in favor of Porter based upon the recommendations made in the DHHR Home Studies. Thereafter, the following was recited in open court by Porter’s attorney, Mr. Adams:

THE COURT:

Mr. Adams, do you want to go ahead and make your stipulations for the record?

MR. ADAMS:

Yes, Your Honor, in the matter ... the caption here, Roosevelt Porter versus number 21,092, Teresa Hobbs, Nee Gaines, the Court has ordered that primary physical custody of the minor child, Roosevelt Lavelle [sic] Gaines, shall be placed with the father, Roosevelt Porter, for the school term to take effect on Friday, October the 30th, 1992....
A written judgment, setting forth the details of the custody award as recited in open court, was signed by the trial judge on November 12, 1992. Hobbs was granted weekend and holiday visitation with Roosevelt, and was given the right to petition the court for review of the custodial “arrangement” on November 1, 1993.
Hobbs retained counsel and a motion for a new trial was filed on November 6, 1992, even before the written judgment was signed. Hobbs alleged that the trial court’s judgment was improper because it was rendered after discussions held in chambers, at which time no evidence was taken, and no witnesses were sworn and placed under oath. Further, Hobbs averred that the judgment was invalid because she was not represented by legal counsel, did not understand the nature of the proceedings, and was not aware that she had the right to put on evidence. Finally, Hobbs claimed that the judgment was in error because Roosevelt has been raised since birth with Christopher, and it is not in Roosevelt’s best interest to separate him from his half brother.
On February 1,1993, the trial eourt denied the motion for new trial. At the hearing on the motion, during which no evidence was presented, Hobbs’ attorney, Mr. Lancaster, made the following statements for the record:

MR. LANCASTER:

Your Honor, in this matter we asked for a new trial. We understand that the Court is going to deny, going to deny the motion for a new trial filed by Teresa Gaines Hobbs. I guess the only stipulation we need placed in the record would be that there was no evidence put on, that there was a hearing in chambers when the custody was changed, that there was a hearing set for September. ...

MR. ADAMS:

September the 21st.

MR. LANCASTER:

Of 1992 at which time the Court did advise Mrs. Gaines that she needed to obtain, I mean Mrs. Hobbs, she needed to obtain counsel. The hearing was reset for October and she came back at that time and there was not an actual hearing in the courtroom. No evidence was put on. There was a hearing in chambers and the Court made a ruling based upon a DHHR report home study that was submitted at that time. Is that correct?

*754
MR. ADAMS:

I would ... that’s correct.
Hobbs appeals, alleging the trial court violated her due process rights by rendering a custody judgment without conducting a evi-dentiary hearing.[1]

DISCUSSION

The due process provisions of the United States and Louisiana Constitutions provide that no person shall be deprived of life, liberty, or property, except by due process of law. U.S.C.A. Const.Amend. 14; and La. Const. Art. 1 § 2. “Procedural due process” requires notice and the opportunity to be heard in orderly proceedings adapted to the nature of the case in accord with established rules. Klein v. Klein, 487 So.2d 775, 776 (La.App. 3d Cir.1986). A procedural due process analysis involves three questions:
(1) whether the interest is or is not protected by due process;
(2) if it is, whether due process requires some kind of hearing; and
(3) if it does, the kind of hearing that is required.
Paillot v. Wooton, 559 So.2d 758, 760 (La.1990).
Our first inquiry is whether Hobbs’ parental rights are within the realm of those that are protected by due process. We find that they are, and that Hobbs has a fundamental liberty interest in the companionship, care, custody and management of Roosevelt, of which she must not be deprived without due process of law. Cf. Deville v. LaGrange, 388 So.2d 696, 697 (La.1980); State in the Interest of T.S.B., 532 So.2d 866, 867 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1239 (La.1989); and State In the Interest of H.P., 463 So.2d 899, 903 (La.App. 2d Cir.1985).
Since parental rights are protected by due process, the second inquiry is whether Hobbs is entitled to a hearing before her parental rights may be limited and modified. We conclude that when protected interests, such as parental rights, are implicated, the right to some kind of prior hearing is paramount. Haughton Elevator Division v. State of Louisiana, 367 So.2d 1161, 1165 (La.1979). It is well settled that an ex parte custody order granted by a trial judge without notice, service of pleadings, and without affording a hearing to the parent having custody of the child is null and without effect. Tabuchi v. Lingo, 588 So.2d 795, 799 (La. App. 2d Cir.1991); and McManus v. McManus 528 So.2d 696, 698 (La.App. 2d Cir.1988). Clearly, Hobbs was entitled to a hearing.
The third, and final, inquiry is what type of hearing must Hobbs be afforded before her parental rights may be limited or modified. In order to adjudicate a contested custody case the trial court must afford the parties an evidentiary hearing at which time the parties may present evidence in an attempt to rebut the presumption that joint custody is in the best interest of the child and to determine which parent shall be designated the primary domiciliary parent. LSA-C.C. Art. 131. See State In the Interest of Johnson, 283 So.2d 333, 335 (La.App. 4th Cir.1973).
As discussed above, the record fails to show that an evidentiary hearing was conducted in open court or in chambers.[2] In this regard, the record fails to reflect that Hobbs was afforded due process, unless we determine that the parties settled and compromised their differences.
It is permissible for parties to settle contested custody cases, without the taking of evidence or presentation of the case to the trial court for resolution on the merits. LSA-C.C. Arts. 131 C(l) and 3071 et seq.; See, e.g., Risher v. Risher, 511 So.2d 1220 (La.App. 2d Cir.1987).
At first glance, the transcript from the October 26th proceeding indicates that the case may have been settled pursuant to “stipulations” agreed to by the parties and recited in open court by Porter’s attorney. Oral settlement agreements are valid if they are recited in open court and are capable of *755 being transcribed from the record of the proceeding. LSA-C.C. Art. 3071. However, Hobbs contends that the “stipulations” recited by Porter’s attorney were not, in fact, stipulations at all. She avers that the trial judge actually ruled on this case in chambers based upon the DHHR Home Studies, and that the “stipulations” were merely a recognition of the trial judge’s decision. Thus, Hobbs argues that the trial judge exceeded his judicial authority by deciding the issue of custody without the taking of evidence and without her agreement.
Hobbs’ assertions have merit. The October 26th transcript shows that the alleged stipulations were mischaracterized as Hobbs suggests. The record shows that Porter’s attorney stated that, “... the Court has ordered that primary custody of the minor child, Roosevelt Lavelle [sic] Gaines, shall be placed with the father, Roosevelt Porter, for the school term to take effect on Friday, October the 30th, 1992.” (Emphasis supplied.) Further, the transcript from the hearing on the motion for new trial indicates, and both parties acknowledged, that before the October 26th custody proceeding, “... a hearing was held in chambers, and the Court made a ruling based upon a DHHR report home study that was submitted at that time.” (Emphasis supplied.)
Although the clerk’s minute entry of October 26 shows that Hobbs was present when the “stipulations” were recited by Porter’s attorney, the record does not show that she received an explanation of the implications of the purported custody settlement, that she understood it, or that she even consented to it. From this record, we cannot say that Hobbs reached a settlement of this custody dispute or that the trial court was within its authority by ruling on the dispute without receiving evidence other than the DHHR Home Studies. If Hobbs agreed to settle the case, or agreed that the Court could make a ruling based solely on the Home Studies and statements made in chambers, the record fails to reflect it.

DECREE

For the foregoing reasons, the judgment of the trial court is vacated. The case is remanded to the trial court for proceedings consistent with this opinion. Costs, are assessed to Porter.
VACATED AND REMANDED.
BROWN, J., concurs with written reasons.

. Our ruling renders moot the other two errors assigned by Hobbs.

. La.C.C. Art 131 G provides that custody hearings may be held in chambers.